Richard S. PROWS and Robert W. Wood, individuals, and Foothill Federated Corporation, a Utah corporation, Plaintiffs and Appellants,

v.

The STATE of Utah, the Department of Financial Institutions of the State of Utah, and Industrial Loan Guaranty Corporation, Defendants and Appellees.

No. 890161.

Supreme Court of Utah.

Dec. 5, 1991.

Rehearing Denied Dec. 5, 1991.

---

Dennis K. Poole, Duane R. Smith, J. Frederic Voros, Jr., Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam, Stephen J. Sorenson, Bryce H. Pettey, Ray R. Christensen, Jay E. Jensen, Salt Lake City, for the State of Utah and the Dept. of Financial Institutions.

P. Keith Nelson, David L. Barclay, Salt Lake City, for Indus. Loan Guar.

DURHAM, Justice:

Richard S. Prows, Robert W. Wood, and Foothill Federated Corporation (collectively "Foothill Federated" or "plaintiffs") appeal from the trial court's order dismissing their amended complaint as to defendants Utah Department of Financial Institutions ("DFI") and the State of Utah (collectively "the State").[1] The amended complaint sought recovery from the State for losses plaintiffs suffered when Foothill Federated Corporation was unable to continue operating as a financial institution. We affirm the trial court's dismissal of the amended complaint.

In its present form, the Industrial Loan Corporation Guaranty Act, Utah Code Ann. §§ 7-8a-1 to -22, creates the Industrial Loan Guaranty Corporation ("ILGC"), a private nonprofit corporation intended to guarantee thrift deposits until those deposits become federally insured. Utah Code Ann. § 7-8a-2. Pursuant to that Act, all industrial loan corporations which are not insured by the federal government and have outstanding thrift certificates of deposit or thrift savings accounts are members of the ILGC. Utah Code Ann. § 7-8a-6. Those members must participate in the ILGC by paying assessments in amounts the statute specifies. Utah Code Ann. § 7-8a-10. The statute limits the maximum amount of funds guaranteed per depositor to $15,000. Utah Code Ann. § 7-8a-8.

Plaintiffs Prows and Wood, acting as Foothill Federated Corporation, acquired Foothill Thrift and Loan, a Utah industrial loan corporation, on December 29, 1985, after Elaine Weis, acting in her capacity as the commissioner of financial institutions, entered an order approving their application. Plaintiffs changed the name of the institution to Foothill Financial and recapitalized it in the approximate amount of $5 million.

The DFI granted plaintiffs a state charter when they acquired Foothill Financial. The institution was not federally insured. As a result, plaintiffs became statutorily obligated to participate in the ILGC by paying the required assessments. In July of 1986, Weis and the DFI declared the ILGC insolvent and, after declaring numerous Utah thrifts insolvent, seized those thrifts' assets. On April 3 and 4, 1987, Foothill Financial suffered a run on its

---

1. Foothill also named as a defendant the Industrial Loan Guaranty Corporation. The claims against the ILGC, however, were stayed by a separate proceeding liquidating that entity.

deposits, forcing it to close its doors. The run was allegedly started by a television news report that Foothill Financial deposits were without any state or federal deposit insurance.[2]

On April 4, 1987, Weis and the DFI seized Foothill Financial. Thereafter, Zions First National Bank acquired the assets of Foothill Financial and Foothill Federated, conditioned on an agreement by Prows and Wood (and other entities they owned) to indemnify Zions against potential losses and refrain from participating in any profits generated by the assets. At the time of the transaction, Foothill Financial deposits totalled approximately $27 million. Due to the loss of Foothill Financial and the indemnification granted to Zions, Prows and Wood now claim that they sustained a loss of approximately $9 million.

Plaintiffs sued the ILGC, the DFI, and the State of Utah for these losses, claiming breach of contract, statutory entitlement, and promissory estoppel. Essentially, plaintiffs argue that the ILGC promised to guarantee Foothill Financial deposits, the ILGC breached its promise by failing to perform on the guaranties, the State was the ILGC's alter ego (because of the relationship of Elaine Weis and the DFI with the ILGC), and thus the State is answerable for the ILGC's breach. In addition, plaintiffs seek to estop the State from denying representations and promises that led plaintiffs to believe that the obligations of the ILGC were guaranteed by the State.

The district court granted defendants' motion to dismiss, citing the following grounds: (1) defendants are immune from suit under subsections 63–30–10(1)(a), (c), (d), and (f) of the Utah Governmental Immunity Act; (2) defendants have no duty of care toward plaintiffs upon which tort liability could be predicated; (3) based upon the allegations set forth in the amended complaint, the State is not the alter ego of the ILGC; and (4) defendants are immune from suit under section 7–8a–20(3) of the ILGC Act. Although none of these

grounds directly address plaintiffs' contract claims, we affirm the trial court's dismissal of the complaint.

Three issues are before us on appeal: first, whether the trial court properly ruled as a matter of law that the State could not be the alter ego of the ILGC; second, whether it is clear that plaintiffs are not entitled to relief on their breach of contract, statutory entitlement, and promissory estoppel claims; and third, whether the State is immune from these claims under the Governmental Immunity Act or under section 7–8a–20(3) of the ILGC Act. Because of the nature of our resolution of plaintiffs' alter ego, statutory entitlement, breach of contract, and promissory estoppel claims, we need not address the State's governmental immunity defenses.

## I. STANDARD OF REVIEW

This case comes to us as an appeal from a dismissal under Utah Rule of Civil Procedure 12(b)(6). A motion to dismiss is appropriate only where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim. *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). In determining whether the trial court properly granted the motion, we must accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff. *St. Benedict's Dev. Co. v. St. Benedict's Hospital*, 811 P.2d 194 (Utah 1991).

## II. ALTER EGO

Plaintiffs assert breach of contract, statutory entitlement, and promissory estoppel claims in their amended complaint. Recovery on the breach of contract and statutory entitlement claims depends on a favorable resolution of the alter ego claim. Under the latter, plaintiffs assert that the ILGC entered into a contract with Foothill Finan-

**2.** Although Foothill had been conditionally approved for FDIC insurance, that insurance was

not yet in place.

cial and Foothill Financial's depositors, that the contract was subsequently breached, and that because the State was the alter ego of the ILGC, the State and the ILGC are both liable for the breach.

■ There are two requirements for proof of alter ego. First, " 'there must be such a unity of interest and ownership that the separate personalities of the corporation[s] ... no longer exist.' " *Municipal Bldg. Auth. of Iron County v. Lowder*, 711 P.2d 273, 278 (Utah 1985) (quoting *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)). Second, the court's observance of the corporate form must " 'sanction a fraud, promote injustice, or [cause] an inequitable result....' " *Id.*

The amended complaint alleges, "Although the ILGC was created by statute as a private nonprofit corporation, by 1985 the DFI and Elaine Weis ... so dominated and controlled the ILGC that it no longer had any separate existence but had become the alter ego of the State of Utah." The complaint also alleges that it would be inequitable to allow the State of Utah, after dominating and controlling the ILGC, to be protected from suit by considering the State and the ILGC as separate entities. The complaint does not include detailed factual allegations supporting plaintiffs' alter ego theory, but under Utah's notice pleading requirements, the foregoing adequately asserts a claim and puts the State on notice of that claim. *See generally* Utah R.Civ.P. 8; *Union Bank v. Swenson*, 707 P.2d 663, 668–69 (Utah 1985).

■ Plaintiffs apparently are relying on an alter ego theory as a means of achieving a greater recovery from the State than that available from the ILGC. There is a fundamental flaw, however, in this reliance. Even if we allow application of an alter ego theory in this instance, and even if plaintiffs could prove this theory at trial, as the alter ego of the ILGC, the State would be liable only to the same extent that the ILGC is liable. While section 7–8a–8 limits liability to $15,000 for each depositor, section 7–8a–13(1) places a limit on the liability of the ILGC. The latter section provides in part, "If the total funds available from the guaranty corporation at that time are insufficient to pay in full the amounts provided by § 7–8a–8, the amount paid to each account holder shall be ratably reduced in proportion to the amount by which the fund is deficient." Plaintiffs allege in their amended complaint that they entered into a contract with the ILGC in which the ILGC agreed "to guarantee Foothill's deposits at *statutorily mandated* levels." (Emphasis added.) Because the terms of such a contract would necessarily include the limitation of liability imposed by the statute, plaintiffs cannot place themselves in a better position by attempting to hold the State, as the ILGC's alter ego, liable under the same contract.

## III. BREACH OF CONTRACT, STATUTORY ENTITLEMENT, AND PROMISSORY ESTOPPEL CLAIMS

In the order dismissing plaintiffs' complaint, the court found that (1) defendants are immune from suit under the Utah Governmental Immunity Act, Utah Code Ann. § 63–30–10(1)(a), (c), (d), and (f); (2) defendants owe no duty of care toward plaintiffs upon which to base tort liability; (3) based upon the allegations set forth in the amended complaint, defendants are not the alter ego of the ILGC; and (4) defendants are immune from suit under section 7–8a–20(3) of the ILGC Act. We affirm the trial court's conclusions, although on different grounds than those articulated by that court.

■ The threshold issue we must address is whether plaintiffs have stated a claim upon which relief can be granted. The only contract claim alleged in the amended complaint asserts, *"Plaintiff Foothill Federated* thus entered into a contract with the ILGC to pay *statutorily required assessments* in exchange for the ILGC's agreement to guarantee Foothill Financial's deposits at statutorily mandated levels." (Emphasis added.) Thus, the only contract plaintiffs allege is a bilateral contract between Foothill Federated and the ILGC. Plaintiffs did not bargain for a

promise from the ILGC to guarantee deposits, however, nor did they pay the assessments in exchange for an act by the ILGC. Neither party's act induced the other's action. On the contrary, plaintiffs concede that each party's act was undertaken pursuant to statute, based upon an existing legal obligation.

It is well recognized that the performance of a duty imposed by law is insufficient consideration to support a contract. *See, e.g., Hale v. Brewster*, 81 N.M. 342, 467 P.2d 8, 11 (1970) (court-appointed attorney had duty to accept payment from court for representation as sole compensation; if client's note was given to attorney as fee for services, attorney was already bound to perform and client had a valid defense to action by attorney on the note); *Gragg v. James*, 452 P.2d 579, 587 (Okla.1969) (oral modification to contract relieving defendant of responsibility must be supported by additional consideration to be enforceable); *Walden v. Backus*, 81 Nev. 634, 408 P.2d 712, 714 (1965) (buyer's relinquishment of premises insufficient to support accord where buyer was already bound under sale agreement to return premises); Restatement (Second) of Contracts § 73 (1981). Therefore, we conclude that statutorily mandated assessment payments do not constitute consideration sufficient to support a contract. Plaintiffs' breach of contract claim fails as a matter of law.

■ Plaintiffs' statutory entitlement claim, which is also based on the alter ego theory, likewise fails. The statutory entitlement claim is based on Utah Code Ann. § 7–8a–8, which provides the amount of the guaranty of depositors' funds. That statute, however, cannot be read separately from section 7–8a–13(1), which requires a ratable reduction of depositors' recoveries by whatever deficiency there may be in the funds available to the guaranty corporation. Because the legislature established the liability of the ILGC under section 7–8a–8 and then limited its liability under section 7–8a–13(1), plaintiffs cannot consistently assert a claim of statutory entitlement against the State based upon one statute while ignoring the other. Whether under the contract theory or the statutory entitlement theory, plaintiffs cannot recover more against the State as the alter ego of the ILGC than they could by suing the ILGC directly.

■ By itself, the statutory limitation of liability in section 7–8a–13(1) does not result in a dismissal of plaintiffs' claims. There may be factual issues regarding the total funds available for the ILGC to distribute. The appropriate place to resolve those issues, however, is in the separate proceeding liquidating the ILGC. Nonetheless, even if the statutory limitation of liability is not a reason for dismissal, plaintiffs' claims were properly dismissed.

■ Even if a statutory entitlement claim exists against the State, an alter ego theory cannot be a basis for that claim. Section 7–8a–8, guaranteeing depositors' funds, was enacted by the legislature. A claim based on that statute should be made directly against the State. Although the ILGC may be a party to the action because of its status as an entity created by statute for the purpose of guaranteeing deposits, there is no reason to use the ILGC as a means of asserting an alter ego claim against the State. Because there is no valid contract claim and the statutory entitlement claim cannot rest on the alter ego theory, it is unnecessary to determine whether the State can be held liable as the alter ego of a publicly created corporation.

Plaintiffs' third claim for relief is based upon promissory estoppel. Plaintiffs seek to estop the State from denying representations and promises that led plaintiffs to believe that the obligations of the ILGC were guaranteed by the State. This court may uphold the trial court's dismissal of this cause of action if the complaint fails to allege the elements of a promissory estoppel claim or if, as a matter of law, estoppel may not be asserted against the State in this instance.

■ The elements of promissory estoppel are (1) a promise the promisor reasonably expects will induce reliance; (2) reasonable reliance inducing action or forebearance by the promisee or a third person;

and (3) detriment to the promisee or a third person. *See Topik v. Thurber,* 739 P.2d 1101, 1103 (Utah 1987); *Sugarhouse Fin. Co. v. Anderson,* 610 P.2d 1369, 1373 (Utah 1980). The amended complaint alleges that (1) Weis and the DFI represented that the State backed up the guarantees, (2) these representations induced plaintiffs to acquire Foothill Financial, and (3) plaintiffs lost approximately $9 million as a result. That pleading sufficiently sets out the elements of promissory estoppel. We therefore turn to the issue of whether, as a matter of law, plaintiffs are precluded from asserting an estoppel claim against the State.

Utah recognizes the general rule precluding a party from asserting estoppel against the government. *Utah State University v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982). This rule safeguards the interests of the public which may be jeopardized by the "vagaries of political tides, frequent changes of public officials, the possibility of collusion, or of circumventing procedures set up by law, then suing for the value of goods furnished or services rendered." *Id.* Nonetheless, we recognize an exception to this general rule in unusual circumstances "when it is plainly apparent that its application would result in injustice, and there would be no substantial adverse effect on public policy...." *Id.* The critical inquiry is "whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception." *Id.* at 720. In *Sutro,* we allowed an estoppel claim against a government entity, but stated:

> In addressing the question whether under any state of facts that may be found in this case the defense of estoppel may be applied, there are some observations to be made. The first is that there is a distinction to be drawn between contracts or activities which are either malum in se, *or which are strictly prohibited by statute,* and thus may be strongly against public policy, as compared to activities ... which, though not authorized by law, are not inherently evil. In the former class of cases, *it is quite universally held that no estoppel will lie*

against the government, whereas in activities which are merely ultra vires the courts are more likely to allow such a defense....

*Id.* at 719 (emphasis added).

In this case, the individual plaintiffs acquired Foothill Financial in a sophisticated multi-million dollar purchase. They are chargeable with notice of the statutes governing the ILGC, particularly section 7–8a–13(1), set out above, limiting the liability of the ILGC to its available funds, and section 7–8a–20(2), which provides:

> All advertising by any person with regard to its membership in the guaranty corporation shall include the following statement: "Thrift certificates of deposit and thrift savings accounts protected up to a maximum of $15,000 by the Industrial Loan Guaranty Corporation of Utah, a private corporation *which is not an instrumentality of the state of Utah* or the Federal Government."

(Emphasis added.) Any statements made by Weis or the DFI that the deposits would be unconditionally insured up to $15,000 are in direct contravention of these statutory limitations. Thus, plaintiffs do not allege a claim that comes within the *Sutro* exception to the rule that promissory estoppel may not be applied against the government. This claim fails as a result.

Plaintiffs do not allege any tortious conduct such as misrepresentation or negligence by Weis or the DFI. They do not complain of any failure to warn Foothill Federated of the imperiled financial condition of the ILGC or that the DFI failed to discover or to be aware of the ILGC's condition. Rather, plaintiffs rely solely on an alleged contract with the State and/or on the assertion that the State is estopped from denying the existence of a contract. These claims are without merit, and we therefore affirm the trial court's dismissal of the complaint.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.