2004 UT App 420

**SONY ELECTRONICS, INC., a Delaware corporation, Plaintiff and Appellant,**

v.

**Erland REBER, an individual; Sharlene Reber, an individual; and Visual Technology, Inc., a Utah corporation, Defendants and Appellees.**

No. 20030883–CA.

Court of Appeals of Utah.

Nov. 18, 2004.

David E. Leta and Kimberly Neville, Snell & Wilmer, Salt Lake City, for Appellant.

Elizabeth M. Peck, Salt Lake City, for Appellees.

Before Judges DAVIS, JACKSON, and THORNE.

OPINION

DAVIS, Judge:

¶ 1 Plaintiff, Sony Electronics, Inc. (Sony), appeals the trial court's order dismissing its claim under Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. We reverse.

## BACKGROUND

¶ 2 In 1986, Sony, a distributor and seller of electronic products, accessories, and software, entered into a security agreement with Visual Technology, Inc. (Visual Technology), under which Visual Technology agreed to pay timely for goods it purchased on credit from Sony. Erland Reber, then president of Visual Technology, executed the security agreement in favor of Sony. At the time the security agreement was executed, Visual Technology's offices were located at 2141 South Main Street, Salt Lake City, Utah.

¶ 3 Three years later, in 1989, Erland Reber and his wife, Sharlene Reber, (collectively, the Rebers), signed a guaranty agreement (the guaranty),[1] agreeing to guarantee full and prompt payment of Visual Technology's debt to Sony. The guaranty indicated that at that time Visual Technology was located at 2155 South Main Street, Salt Lake City, Utah.

¶ 4 Sony continued to sell goods to Visual Technology on credit through 2001. In August 2001, Sony and Visual Technology entered into a reseller agreement (the reseller agreement), which governed Sony's sale of goods to Visual Technology on credit. The reseller agreement was signed by Bruce Jackson, as president of Visual Technology, now located at 474 Bearcat Drive, Salt Lake City, Utah.

¶ 5 By January 2002, Visual Technology began defaulting on its payment obligations to Sony. In April 2002, Sony filed a complaint against Visual Technology and the Rebers seeking, under the security agreement, guaranty, and reseller agreement, to recover money owed to Sony for unpaid invoices.

¶ 6 In response, the Rebers moved to dismiss Sony's claim. The Rebers claimed that in 1992 they sold the assets of Visual Technology to Bruce A. Jackson, Dixie Lee Jackson (collectively, the Jacksons), and an entity known as Dunston–Hill, which was owned by the Jacksons.[2] The Jacksons, the Rebers asserted, purchased all of the assets and assumed all of the liabilities of Visual Technology. Shortly after purchasing the assets of Visual Technology, the Jacksons changed the name of Dunston–Hill to Visual Technology, Inc. In support of their claim, the Rebers attached to their motion to dismiss the Articles of Incorporation for Dunston–Hill, the sale agreement between the Rebers and the Jacksons, and other documents reflecting Dunston–Hill's name change to Visual Technology, Inc. In their motion, the Rebers argued that they could not be held liable under the guaranty because it applied to a different corporate debtor—the Visual Technology company they owned, not the Visual Technology incorporated by the Jacksons. Sony opposed the Rebers' motion, contending that the Rebers' guaranty "remained enforceable until revoked in writing, regardless of any alleged asset sale or change in Visual Technology's corporate structure."

¶ 7 The trial court granted the Rebers' motion to dismiss. In its order granting the motion, the court specifically noted that it

---

1. Section 2 of the guaranty provides:
   *Obligations of Guarantors.* To induce the Creditor to sell, or agree to sell to, or extend or agree to extend credit to the Debtor, and in consideration of the Creditor's doing so, Guarantors do hereby guarantee to the Creditor the full, prompt[,] and unconditional payment, upon the date due, of each and every debt of the Debtor; the full, prompt[,] and unconditional performance of every term and condition of any transaction to be kept and performed by the Debtor; and the payment of interest on each and every debt of the Debtor. In the event that the Guarantor shall consist of more than one person, the obligations of such persons hereunder shall be joint and several. The foregoing obligations are without regard to any offset, defense or counterclaim of the Debtor, however arising, and without recourse by the Guarantor to its remedies against the

Debtor. The foregoing obligations may hereinafter be referred to as the "Obligations[."]
Section 3 of the guaranty provides:
   *Character of Obligation.* This guaranty is an absolute, continuing, unconditional[,] and unlimited Guaranty. The term of this Guaranty shall commence on the date first above indicated hereof. No termination of the Guaranty shall be effected by the death of the Guarantor. This Guaranty shall be effective regardless of any subsequent incorporation, reorganization, merger or consolidation of the Debtor, change of partners, change of name or any other change in the composition, nature, personnel or location of the Debtor whatsoever.

2. On appeal, Sony contends that any facts beyond those contained in its complaint are contested.

declined to treat the Rebers' motion to dismiss as a motion for summary judgment.[3] The court declared that "the only materials that [it] referred to in making its decision [were] the [c]omplaint and documents attached thereto." According to the court, the reseller agreement, attached to Sony's complaint, demonstrated that Sony had entered into an agreement with a new entity, separate from the entity whose debts the Rebers guaranteed—the court based this determination on the fact that the reseller agreement listed a different address and president for Visual Technology than the address and president listed in the guaranty signed by the Rebers. In its findings of fact, included in the order of dismissal, the court found:

5. In this case, there are two parallel corporations who share the same name.

6. This first corporation, Visual Technology (I) no longer exists. It is the corporation whose debts the Rebers guaranteed.

7. The second corporation, Visual Technology (II), is a wholly separate corporation which was formerly known as Dunston–Hill.

8. The documents attached to the [c]omplaint evidence that [Sony] entered into a [r]eseller [a]greement with the new debtor Visual Technology (II) on August 1, 2001. The address for the new debtor is different from the address of the debtor, Visual Technology (I), referenced in the [g]uaranty.

9. From the date of the [r]eseller [a]greement on August 1, 2001, it appears that [Sony's] correspondence to Visual Technology was mailed to a new address and that [Sony] dealt with the signatory to the [r]eseller [a]greement, Mr. Bruce Jackson.

10. This case does not involve a change in the financial structure or organization of the debtor which is the subject of the [g]uaranty, Visual Technology (I). It involves a new debtor altogether, Visual

Technology (II), which was not covered by the [g]uaranty in the first place.

(Citation omitted.) Therefore, the court held that "[u]nder the facts alleged in the [c]omplaint and in light of the documents attached to the [c]omplaint, there is no plausible way that the Rebers can be held liable under the [g]uaranty."

## ISSUE AND STANDARD OF REVIEW

¶ 8 Sony asserts that the trial court erred in granting the Rebers' motion to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. "[T]he propriety of a 12(b)(6) dismissal is a question of law"; therefore, "we give the trial court's ruling no deference and review it under a correctness standard." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).

## ANALYSIS

¶ 9 Sony argues that the trial court improperly granted the Rebers' motion to dismiss under rule 12(b)(6) because the factual allegations of the complaint were sufficient to state a claim that the Rebers had guaranteed the debt owed to Sony.

¶ 10 "On appeal from a motion to dismiss under Utah Rule of Civil Procedure 12(b)(6), we review the facts only as they are alleged in the complaint." *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 2, 24 P.3d 958. Moreover, "[w]hen determining whether a trial court properly dismissed an action under rule 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff." *Cazares v. Cosby*, 2003 UT 3, ¶ 13, 65 P.3d 1184 (quotations and citations omitted). "A rule 12(b)(6) dismissal is merely a recognition by a trial court that a plaintiff's claim for relief is formally deficient," *id.* at ¶ 14; therefore, "[a] motion to dismiss is appropriate only

---

3. At the hearing on the Rebers' motion to dismiss, counsel for the Rebers stated:

Your Honor, on a matter of procedure, and forgive my naiveté on this, it seems to me that if matters are brought up outside the pleadings, it ought to be treated as a motion for summary judgment. And I don't know if the [c]ourt is treating this as such or not at this point.

The court responded, "I'm not. It was not couched as a motion for summary judgment, it was a motion to dismiss. That's how I intend to look at it."

where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim," *Prows v. State*, 822 P.2d 764, 766 (Utah 1991). *See also Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996) ("[T]he purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case.").

¶ 11 We conclude that the trial court erred in determining that Sony's complaint failed to state a claim upon which relief could be granted. The trial court could not have determined, from the facts alleged in Sony's complaint and the documents attached thereto, that the Rebers had guaranteed the debts of an entity separate from the one being sued by Sony. In the trial court's memorandum decision, the court stated, "[A]s the [Rebers'] counsel clearly articulated during oral argument, this case does not involve a change in financial structure or organization of Debtor that is the subject of the [g]uaranty, but rather a new debtor altogether, one that was not covered by the [g]uaranty in the first place." In reaching this conclusion, the trial court apparently relied on the reseller agreement, which provides the name of a different president and a different address for Visual Technology than are contained in the guaranty. However, as Sony argues, the mere fact that the address and president of Visual Technology listed in the reseller agreement are different than those listed in the guaranty does not show that the Rebers had guaranteed the debts of a company other than the one being sued by Sony. This is particularly true in the context of section 3 of the guaranty, which anticipates that the same debtor may at some point change its address or corporate officers. Section 3 of the guaranty provides, in part, "This [g]uaranty shall be effective regardless of any subsequent incorporation, reorganization, merger or consolidation of the Debtor, change of partners, change of name or any other change in the composition, nature, personnel[,] or location of the Debtor whatsoever."

¶ 12 From the facts contained in the complaint and the attached reseller agreement, the trial court could not have concluded that Sony had been dealing with two separate companies. Instead, the trial court relied on information contained in the Rebers' motion to dismiss and its attached documents in determining that Sony's claim was insufficient. All or part of findings 5 through 10 are based on material in the Rebers' motion to dismiss. Because the trial court had to consider facts not contained in the complaint to dismiss Sony's claim, we hold that the trial court should have treated the Rebers' motion as one for summary judgment.[4]

## CONCLUSION

¶ 13 We conclude that the trial court erred in dismissing Sony's complaint under rule 12(b)(6) rather than treating the Rebers' motion as a motion for summary judgment under rule 56 of the Utah Rules of Civil Procedure.[5] We reverse the trial court's grant of the Rebers' motion to dismiss and remand for further proceedings including, but not limited to, proceedings under rule 56.[6]

¶ 14 WE CONCUR: NORMAN H. JACKSON, Judge and WILLIAM A. THORNE Jr., Judge.

---

4. Rule 12(b) of the Utah Rules of Civil Procedure provides, in relevant part:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

5. We conclude only that the trial court improperly dismissed Sony's claim, we do not determine whether Sony is entitled to recovery from the Rebers under the guaranty.

6. Because we reverse the trial court's ruling and remand for further proceedings, we do not reach several issues. These issues include, but are not limited to, the Rebers' claim for attorney fees and the application of *Mule–Hide Products Co. v. White*, 2002 UT App 1, 40 P.3d 1155, to Sony's claim.