2013 UT App 24

# THE UTAH COURT OF APPEALS

COTTONWOOD IMPROVEMENT DISTRICT,

*Plaintiff and Appellee,*

*v.*

QWEST CORPORATION,

*Defendant and Appellant.*

Memorandum Decision
No. 20110954-CA
Filed January 25, 2013

Third District, Salt Lake Department
The Honorable Joseph C. Fratto Jr.
No. 090920404

Joseph E. Minnock, Attorney for Appellant
Jeremy R. Cook and Catherine L. Brabson,
Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this
Memorandum Decision, in which
JUDGES WILLIAM A. THORNE JR. and
CAROLYN B. MCHUGH concurred.

VOROS, Judge:

¶1     The question on appeal is whether Qwest Corporation (Qwest) is obligated to reimburse Cottonwood Improvement District (Cottonwood) $31,022.90 for the cost of removing a cable owned by Qwest from a sewer line owned by Cottonwood. At trial, Cottonwood proceeded on three theories: promissory estoppel, unjust enrichment, and violation of the Damage to Underground

Utility Facilities Act. *See* Utah Code Ann. §§ 54-8a-2 to -13 (LexisNexis 2010). In keeping with the special verdicts returned by an advisory jury, the trial court granted judgment for Cottonwood on the first two causes of action but not on the third. Qwest appeals. We affirm.

¶2 Qwest first contends that the elements of promissory estoppel were not established, because even if Qwest had not promised to reimburse Cottonwood, Cottonwood would still have excavated and repaired the sewer line. "Claims based on equitable doctrines 'are mixed questions of fact and law.'" *Richards v. Brown*, 2009 UT App 315, ¶ 11, 222 P.3d 69 (quoting *U.S. Realty 86 Assocs. v. Security Inv., Ltd.*, 2002 UT 14, ¶ 11, 40 P.3d 586), *aff'd*, 2012 UT 14, 274 P.3d 911. "Accordingly, we defer to a trial court's factual findings unless there is clear error but review its legal conclusions for correctness." *Id.* (citing *Jeffs v. Stubbs*, 970 P.2d 1234, 1244 (Utah 1998)). A finding is clearly erroneous "'only if the finding is without adequate evidentiary support or induced by an erroneous view of the law.'" *State v. Walker*, 743 P.2d 191, 193 (Utah 1987) (quoting Wright & Miller, *Federal Practice & Procedure* § 2585 (1971)). Therefore, we will not disturb a finding unless it is "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *Id.* "However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts." *Richards*, 2009 UT App 315, ¶ 11 (citing *Jeffs*, 970 P.2d at 1245; *Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997)).

¶3 "A party claiming promissory estoppel must establish the following: (1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Weese v. Davis County Comm'n*, 834 P.2d 1, 4 n.17 (Utah 1992) (citing *Prows v. State*, 822 P.2d 764, 768–69 (Utah 1991); *Topik v. Thurber*, 739 P.2d 1101, 1103 (Utah 1987)). To prove detrimental reliance on the defendant's representation, the plaintiff

"'must have done some act which [it] otherwise would not have done.'" *Andreason v. Aetna Casualty & Surety Co.*, 848 P.2d 171, 175 (Utah Ct. App. 1993) (quoting a jury instruction and finding it consistent with case law).

¶4      Here, Qwest challenges the trial court's finding of detrimental reliance. It argues that Cottonwood did not do anything in reliance on Qwest's promise that it otherwise would not have done. Qwest points to the testimony of Cottonwood's representative, Gregory Neff, who testified that Cottonwood would have repaired the pipe even if it had never talked to any representative of Qwest. He further testified that, if Cottonwood had repaired the line on its own initiative, the cost would have been essentially the same.

¶5      We agree with Qwest that some of Neff's testimony may be read in that manner. However, Neff also testified that Cottonwood could have cleared the sewer pipe without excavating and repairing the pipe as it did after receiving Qwest's promise. He testified that Cottonwood had "some equipment that would have done sort of a rough-cut job" by going inside of the pipe and cutting the line from the inside. Although this approach "would have cleared [the cable] out of there," Qwest did not want the cable cut because "that cable is a 200-pair or something larger possibly, and . . . that is a difficult thing for them to repair with all those small phone wires in there."

¶6      Neff also testified that he "was nervous about sending [Cottonwood's] contractor out there without knowing whether or not we were going to be able to get paid for it." He asked Qwest, "if we send our contractor out . . . and they dig it up and they fix the sewer line and then they find out that it is, in fact, a Qwest cable, will Qwest pay for it? And [Qwest's representative] told me, yes, they will. *So based on that conversation*, we scheduled Wolf Excavating to go out and [do the work]." (Emphasis added.)

¶7      In view of this testimony, we cannot agree that the court's finding is against the clear weight of the evidence, especially

granting the trial court the "broader discretion" it is allowed in cases of this type. *See Richards v. Brown*, 2009 UT App 315, ¶ 11, 222 P.3d 69.

¶8 Qwest also argues that Cottonwood's promissory estoppel claim fails because enforcement of Qwest's promise of reimbursement is not necessary to avoid injustice. "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Andreason v. Aetna Casualty & Surety Co.*, 848 P.2d 171, 175 (Utah Ct. App. 1993) (citations and internal quotation marks omitted). No injustice would result from rejecting Cottonwood's promissory estoppel claim, Qwest argues, because "the sole reason the sewer pipe was penetrated by the Qwest cable was Cottonwood's refusal to comply with the Damage to Underground [Utility] Facilities Act."

¶9 The jury did not find that Qwest had violated the Damage to Underground Utility Facilities Act. The jury was not asked to find that Cottonwood had violated the Act, although on appeal Qwest points to record testimony that could have supported such a finding. Qwest did argue this theory to the trial judge, who evidently concluded that, although Qwest could have refused to make the promise and insisted on its rights under the Act, Qwest should be held to the promise it chose to make instead. Qwest cites no authority for the proposition that promissory estoppel is inapplicable as a matter of law where the promise sought to be enforced in effect waives a statutory defense the promisor might otherwise have asserted. *Cf. Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 14, 100 P.3d 1200 (describing the promissory estoppel exception to the Statute of Frauds).

¶10 We therefore consider the claim of error on appeal as a challenge to the trial court's application of law to fact. "However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts."

*Richards*, 2009 UT App 315, ¶ 11. Here, the trial court might have accepted Qwest's argument as a matter of equity. But on the facts of this case, as presented in the briefs on appeal, and under the broader discretion appropriately granted to trial courts in cases of this type, we cannot say that the trial court exceeded its discretion in ruling as it did.[1]

¶11     In sum, we affirm the trial court's judgment against Qwest on Cottonwood's promissory estoppel claim.

¶12     Affirmed.

———

[1]The trial court alternatively based its judgment on Cottonwood's unjust enrichment theory. On appeal, Qwest also challenges this ground for the court's damage award. However, our conclusion that Cottonwood is entitled to judgment on its promissory estoppel claim moots this claim of error.