2024 UT App 21

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF
DAVID LAMAR BERREY.

DAVID JEFFERSON BERREY,
Appellant,
*v.*
BRADLEY BROWN,
Appellee.

Opinion
No. 20210415-CA
Filed February 23, 2024

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 183901143

Karthik Nadesan, Attorney for Appellant

P. Matthew Muir, Attorney for Appellee
Bradley Brown

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

OLIVER, Judge:

¶1      The trust that David Lamar Berrey (Father) and his wife
Roberta Berrey established in 1993 included the family's ranch in
Montpelier, Idaho (the Ranch). David Jefferson Berrey (Son)
asserts that in 2007, Father promised to give his share of the Ranch
to Son in exchange for his help with a particular issue burdening
the Ranch. Although Son claims to have provided the requested
help, by the time Father passed away, Father had updated the
estate planning documents and left the Ranch to his grandsons.
Son brought suit against Father's estate, in part, to enforce the

2007 promise on the grounds of promissory estoppel. Following a bench trial, the district court dismissed the promissory estoppel claim, and Son appeals that ruling. For the reasons that follow, we affirm the district court's decision.

BACKGROUND

¶2      In 1993, Father and Roberta[1] made an estate plan, establishing a trust (the 1993 Trust) with both as trustees. The 1993 Trust provided that upon the death of either trustee, two trusts would be formed: a marital trust (the Marital Trust)—funded with a specified amount from the 1993 Trust—and a family trust (the Family Trust)—funded with the remainder of the 1993 Trust's assets. The 1993 Trust also provided that when both trustees died, assets of the Family Trust and the Marital Trust were to be divided equally among the trustees' five children.

¶3      In 2002, Father formed Berrey Family Properties of Idaho, LC (the Idaho LC), which held the Ranch as an asset. Father and Roberta were its sole members, each holding a 50% interest. The Idaho LC also acquired a cabin and property that Father and Roberta owned at Bear Lake, Idaho (the Bear Lake Property).

¶4      Later that year, Roberta passed away. The attorney who prepared the 1993 Trust testified at trial that, pursuant to the estate plan, Roberta's death resulted in the creation and funding of the Family Trust and the Marital Trust and a transfer from Roberta of a 36% interest in the Idaho LC to the Family Trust, with the remainder of her interest in the Idaho LC—approximately 14%—passing to Father as a bequest. At the same time, according to the attorney, Father's interest in the Idaho LC, which then totaled approximately 64%, passed into the Marital Trust. Thus,

---

1. Because several of the individuals involved in this case are members of the same family, we refer to them by their first names with no disrespect intended by the apparent informality.

the Marital Trust and the Family Trust became members of the Idaho LC—holding an approximate 64% and 36% membership interest respectively—with Father as sole trustee of both trusts.

¶5    In 2007, according to Son's testimony at trial, Father asked Son for help resolving a dispute with the Union Pacific Railroad that was affecting the Ranch.[2] Son had been "work[ing] the [R]anch all the time," but he told Father he was unwilling to get involved with the dispute unless he had assurances about inheriting a larger share of the Ranch when Father died. Son knew the ownership of the Ranch would be evenly divided among the five children—himself and his four sisters—when Father passed away, and he explained to Father that he "c[ould]n't afford to buy [his] sisters out." According to Son, Father replied, "If you pull us out of this jam with the Union Pacific, I'll make that promise that you get my share of the [R]anch." Son claimed he "put a lot of work into saving the [R]anch from the railroad," including "several months doing research."

¶6    In 2014, however, Father changed his mind and announced to the family his wish to sell the Ranch to J.R., Son's own son (Grandson). Son testified he approached Father to persuade him to keep the 2007 promise to give Son the Ranch. According to Son, Father "didn't say anything and just sat there." Father then circulated among his children a disclosure and agreement to sell, seeking their consent—although Father did not believe he needed it—for sale of the Ranch to Grandson. When Father did not obtain his children's unanimous consent, he abandoned his attempt to sell the Ranch to Grandson and amended the 1993 Trust to make Bradley Brown, Father's accountant, its successor trustee.

---

2. No other evidence was presented at trial to shed light on the conflict between the Union Pacific Railroad and the Ranch besides Son's statement that Father told him, "I really need you to keep this—this railroad crossing open."

¶7 Later that year, Father also sent a letter to his children, informing them he "no longer want[ed] the responsibility" of the Ranch and the Bear Lake Property and was "turning the responsibilities of" the Ranch and the Bear Lake Property "over to [his] five kids" and if they were "not willing to accept these responsibilities then [he could] assume that [he could] do what ever [sic] [he] want[ed] to do with" those properties. The letter went on to say, "I am not the Trustee of YOUR properties, I am the owner until I die."

¶8 In 2015, Father updated his estate plan by executing a new will and creating the David L. Berrey Living Trust (the 2015 Trust). The 2015 Trust mostly mirrored the 1993 Trust—providing all assets to be equally distributed among Father and Roberta's children—except in two significant ways. First, it provided for the Bear Lake Property, which Father had recently transferred from the Idaho LC to the 2015 Trust—along with $50,000 for the property's maintenance—to go to Father and Roberta's granddaughters. Second, it provided for the Ranch—still owned by the Idaho LC—to go to Father and Roberta's grandsons. The 2015 Trust also named Brown as the successor trustee.

¶9 In May 2018, Father passed away at the age of ninety-eight, and the contents of the 2015 Trust became known to Brown and to Father's children for the first time. As personal representative of Father's estate, Brown commenced this action and sought informal probate of Father's 2015 Trust and accompanying will.[3] Several months later, Son filed three claims against Father's estate. He asserted that Father "wrongfully distributed" assets from his estate "and/or from the Family Trust" when he "withdrew the entire principal of the Family Trust." Son also asserted a claim of

---

3. In 2019, Brown filed a petition commencing a different case before a different judge for the court to clarify a number of urgent issues regarding the Idaho LC. Several months later, upon Brown's request, the court consolidated that case into this matter.

promissory estoppel and a claim of unjust enrichment against Father "in regard to ownership interest of" the Idaho LC.[4]

¶10 At the end of 2020, the district court held a three-day, remote bench trial. Son represented himself at trial, testifying about his "deep connection" to the Ranch that had motivated him to take care of the Ranch for most of his life. Son averred that he "did a lot of work there," and bought tractors, a horse, and "a thousand dollars' worth of gates." He also acknowledged he spent time and money on the Ranch even "after knowing that that wasn't going to qualify for any estoppel claim." He explained, "I did that just to protect the [R]anch because it was falling apart. I don't expect that to be rewarded in an estoppel claim. I spent tens of thousands—tens of thousands of dollars . . . just to save it."

¶11 After Son presented his case, Brown made a rule 52(e) motion, by which a "court may enter non-final judgment against the party" when the party "has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue." *See* Utah R. Civ. P. 52(e). The court granted the motion on the personal property and the Bear Lake Property claims, but deferred ruling on the remaining claims "until the close of evidence."

¶12 At the conclusion of the trial, the district court entered its findings of fact and conclusions of law. The court ruled against Son on his remaining two claims, concluding that Son did not meet his burden of proof on any of the elements of unjust

---

4. Son later supplemented his petition to allege that the Bear Lake Property was improperly conveyed from the Idaho LC to the 2015 Trust and that Father wrongfully distributed personal property to Son's sisters when Roberta died. The district court dismissed these claims, *infra* ¶ 11, and Son does not appeal that ruling.

enrichment and promissory estoppel and that even if he had, the remedy he sought was inequitable.[5]

ISSUE AND STANDARDS OF REVIEW

¶13 Son challenges the district court's denial of his promissory estoppel claim. "Promissory estoppel is an equitable claim for relief . . . ." *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct. App. 1993). "Claims based on equitable doctrines are mixed questions of fact and law." *Volonte v. Domo, Inc.*, 2023 UT App 25, ¶ 28, 528 P.3d 327 (cleaned up). "Accordingly, we defer to a [district] court's factual findings unless there is clear error, but we review its legal conclusions for correctness. However, because of the fact-intensive nature of equitable doctrines, we grant the [district] court broader discretion in applying the law to the facts." *Id.* (cleaned up). Similarly, a district court "is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and it will not be overturned unless it has abused its discretion." *Ockey v. Lehmer*, 2008 UT 37, ¶ 42, 189 P.3d 51 (cleaned up).

ANALYSIS

¶14 "A party claiming promissory estoppel must establish the following: (1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Cottonwood Improvement Dist. v. Qwest Corp.*, 2013 UT App 24, ¶ 3, 296 P.3d 754 (cleaned up); *see also Prows v. State*, 822 P.2d 764, 768–69 (Utah 1991); *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980). The district court

---

5. The district court also concluded that Son's promissory estoppel claim was time-barred. Because we affirm the district court's ruling on other grounds, we need not reach this issue.

concluded the promissory estoppel claim failed "because [Son] did not carry his burden of proof in meeting the elements of the claim." We see no clear error in the district court's finding that there was insufficient evidence of detrimental reliance. And we further conclude, as an alternative and independent basis, that even if Son had proved all the elements of promissory estoppel, the evidence Son presented was insufficient for the district court to craft an equitable remedy.

## I. Detrimental Reliance

¶15      "To prove detrimental reliance . . . , the plaintiff must have done some act which it otherwise would not have done." *Cottonwood*, 2013 UT App 24, ¶ 3 (cleaned up). Son contends that in reasonable reliance on the promise, he undertook efforts to "sav[e] the [R]anch from the railroad" and that these efforts, combined with his subsequent efforts to maintain the Ranch, amount to detrimental reliance. The district court disagreed, finding that Son "did not introduce evidence showing what work he did, when he did it, how long it took him, the value of the work, or why it caused him detriment." Without "a single document" before it "showing that [Son] did anything in relation to the [R]anch and the railroad," the court found that Son failed to meet his burden of proof of demonstrating detrimental reliance. We see no clear error in the district court's finding.

¶16     The only evidence of detrimental reliance put forth by Son was his own testimony that he "put a lot of work into saving the [R]anch from the railroad," including spending "several months doing research." He provided nothing beyond these vague statements, and his testimony is uncorroborated by documentation of any kind. In addition to Son's testimony about his efforts tied directly to the promise, Son asserted he "did a lot of work" on the Ranch, such as buying tractors, a horse, and more than a "thousand dollars' worth of gates." Son further testified at trial about his "deep connection" to the Ranch and described how

most of his life he has cared for the Ranch, believing he "was going to be the one that could carry it to the next generation." But he also testified that he spent time and money on the Ranch "just to protect the [R]anch because it was falling apart. I don't expect that to be rewarded in an estoppel claim. I spent tens of thousands—tens of thousands of dollars . . . just to save it."

¶17 According to his own testimony, then, Son's upkeep of the Ranch did not stem from a detrimental reliance on Father's promise, but on a loyalty to the Ranch that would have motivated him regardless of the promise. Thus, Son's work on the Ranch was not "some act which [he] otherwise would not have done" absent the promise. *See id.* (cleaned up).

¶18 Considering the only evidence before the court of Son's detrimental reliance—his vague and undefined efforts to "save the ranch"—we cannot say the court clearly erred when it found he failed to meet his burden of proof that he suffered a detriment as a result of the promise by Father. Therefore, the district court properly dismissed his claim for promissory estoppel.

## II. Equitable Remedy

¶19 Although we could end our analysis with detrimental reliance, we see value in exercising our discretion to address an alternative and independent basis for affirming the district court's ruling. *See Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11, 120 P.3d 34 ("It is well established that we may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action[.]" (cleaned up)).

¶20 "Promissory estoppel is an equitable claim for relief . . . ." *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct. App. 1993). When it comes to equitable claims, "the selection and crafting of an appropriate remedy has long been thought to be the

province of the common law." *State v. Rowan*, 2017 UT 88, ¶ 44, 416 P.3d 566 (Lee, J., concurring). A district "court is accorded considerable latitude and discretion in applying and formulating an equitable remedy." *United States Fuel Co. v. Huntington-Cleveland Irrigation Co.*, 2003 UT 49, ¶ 9, 79 P.3d 945 (cleaned up); *see also Commercial Club Bldg. LLC v. Global Rescue LLC*, 2023 UT App 37, ¶ 25, 529 P.3d 382. That discretion encompasses the ability to craft "remedies consistent with the *extent* of the reliance." *Andreason*, 848 P.2d at 175 (cleaned up). Indeed, the "remedy granted for breach may be limited as justice requires." *Tolboe Constr. Co. v. Staker Paving & Constr. Co.*, 682 P.2d 843, 845 (Utah 1984) (quoting Restatement (Second) of Contracts § 90(1) (Am. L. Inst. 1981)).

¶21   Here, Son's uncorroborated and vague testimony about his efforts to help Father with an unexplained problem did not provide sufficient evidence from which the district court could exercise its considerable discretion to craft an equitable remedy. Son requested he be awarded Father's share of the Ranch—which was approximately 64% ownership—but he provided no evidentiary basis from which the district court could determine whether an award of the full share, or even some lesser portion, was equitable given the undefined extent of Son's reliance on the promise. After all, Son presented no evidence of what work he did, how he did it, when he did it, how much time he spent, or the value of the work. Accordingly, we affirm the district court's dismissal of Son's promissory estoppel claim on this basis as well.

CONCLUSION

¶22   We affirm the district court's ruling. Because Son failed to meet his burden of proof on his promissory estoppel claim and, in the alternative, because the evidence of detrimental reliance was insufficient to permit the district court to craft an equitable remedy, the claim was properly dismissed.

———————