# 2023 UT App 25

## THE UTAH COURT OF APPEALS

FERNANDO VOLONTE,
Appellant,
*v.*
DOMO, INC., ET AL.,
Appellees.

Opinion
No. 20210399-CA
Filed March 9, 2023

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 190401778

Jon V. Harper, Francis A. Bottini Jr., and Yury A.
Kolesnikov, Attorneys for Appellant

Gregory M. Saylin, Cory A. Talbot, Michelle Quist,
Ignacio E. Salceda, Gregory L. Watts, Stephanie L.
Jensen, Tyre L. Tindall, and Steffen N. Johnson,
Attorneys for Domo Appellees[1]

Matthew L. Lalli, Annika L. Jones, and Adam S.
Hakki, Attorneys for Underwriter Appellees[2]

Juliana M. Yee, Attorney for Amicus Curiae
Chamber of Commerce of the United States
of America

---

1. Domo Appellees include Domo, Inc., Joshua G. James, Bruce Felt, Fraser Bullock, Matthew R. Cohler, Dana Evan, Mark Gorenberg, Nehal Raj, and Glenn Solomon.

2. Underwriter Appellees include Morgan Stanley & Co., Credit Suisse Securities, Allen & Co., William Blair & Company, UBS Securities, Cowen and Company, and JMP Securities.

JUDGE RYAN D. TENNEY authored this Opinion, in which JUSTICES DIANA HAGEN and JILL M. POHLMAN concurred.[3]

TENNEY, Judge:

¶1    Domo, Inc. (Domo) provides a cloud-based platform that gives customers access to certain data-processing services. After Domo went public in June 2018, Fernando Volonte purchased some of its stock. In November 2019, Volonte sued both Domo and various entities that had assisted it in going public, raising claims against them under the Securities Act of 1933 (the Securities Act). *See* 15 U.S.C. § 77. Volonte filed his suit in Utah state court, even though Domo's corporate bylaws stated that all claims against it arising under the Securities Act could only be litigated in "the federal district courts of the United States of America."

¶2    Domo and the other defendants moved to dismiss Volonte's complaint for improper venue, and the district court granted that motion. Volonte now appeals that decision. For the reasons set forth below, we affirm.

BACKGROUND

*Domo's Bylaws and* Sciabacucchi

¶3    Domo is a Delaware corporation that was founded in 2010. It's headquartered in American Fork, Utah, and it provides a cloud-based platform to its customers. Domo went public on June 29, 2018. In connection with its initial public offering (IPO), Domo

---

3. Justices Diana Hagen and Jill M. Pohlman began their work on this case as members of the Utah Court of Appeals. They each became members of the Utah Supreme Court thereafter and completed their work on this case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(4).

filed a registration statement and a prospectus (collectively, the Offering Documents). These documents were prepared by various investment banks that aided Domo with its IPO (collectively, the Underwriter Defendants), and the documents contained Domo's corporate bylaws. One of these bylaws set forth what the parties have called a "federal forum provision," or, as an alternative shorthand, an "FFP." Domo's FFP states:

> Unless the corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act of 1933, as amended.

¶4    About six months after Domo's IPO, the Delaware Court of Chancery issued a decision holding that FFPs like Domo's were facially invalid under Delaware law. *See Sciabacucchi v. Salzberg*, No. 2017-0931-JTL, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018). In light of this decision, Domo filed a publicly accessible Form 8-K (the Form 8-K) on January 7, 2019, which stated in relevant part:

> On December 19, 2018, the Delaware Chancery Court issued an opinion . . . invalidating provisions in the certificates of incorporation of Delaware corporations that purport to limit to federal court the forum in which a stockholder could bring a claim under the Securities Act of 1933, as amended . . . . This case may be appealed to the Delaware Supreme Court.
>
> Article XI of the Amended and Restated Bylaws (the "Bylaws") of Domo, Inc. . . . contains a similar federal forum selection provision. As such, and in light of the recent *Sciabacucchi* decision, the Company does not currently intend to enforce the foregoing federal forum selection provision unless

the *Sciabacucchi* decision is appealed and the Delaware Supreme Court reverses the decision. If there is no appeal of the *Sciabacucchi* decision or if the Delaware Supreme Court affirms the Chancery Court's decision, then the Company intends to amend the Bylaws to remove the invalid provision.

Sometime after Domo filed the Form 8-K, the *Sciabacucchi* decision was appealed to the Delaware Supreme Court.

*Volonte's Complaint*

¶5 Volonte purchased Domo stock pursuant and traceable to Domo's IPO. After Volonte purchased his stock, Domo announced disappointing financial results and provided guidance for the upcoming fiscal year that "fell short of market expectations." After these reports were issued, Volonte filed a class action suit in Utah state court "on behalf of a class consisting of all persons and entities . . . that purchased or otherwise acquired Domo common stock pursuant and/or traceable to" Domo's IPO.

¶6 At the outset of his complaint, Volonte alleged that the Offering Documents "contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed." Volonte identified as defendants Domo and a group of its current and former officers (collectively, Domo), as well as the Underwriter Defendants. With respect to the Underwriter Defendants, Volonte alleged that they had "help[ed] to solicit investors to buy Domo stock in the IPO," had failed "to conduct adequate due diligence," and had "acted as financial advisors for and assisted in the preparation and dissemination of [Domo's] false and misleading" Offering Documents.

¶7 Volonte pleaded three causes of action, each of which was based on the Securities Act. *See* 15 U.S.C. § 77. The first two were

pleaded against "All Defendants"—meaning, both Domo and the Underwriter Defendants. The third was pleaded against certain of the "Individual Defendants" who were directors at Domo at the time of the IPO.

¶8    Volonte filed this suit on November 8, 2019. At that time, the *Sciabacucchi* decision had already been appealed to the Delaware Supreme Court, but that court had not yet ruled on it.[4]

*Domo's Motion to Stay*

¶9    In January 2020, Domo moved to stay Volonte's suit in light of another pending class action that had been filed against it. Domo noted that the other suit had been filed against it in the United States District Court for the District of Utah just three weeks before Volonte filed this suit in Utah state court, that the other suit alleged similar claims to Volonte's, and that the other suit sought to represent the same class of shareholders that Volonte sought to represent. A few months later, the Utah state court denied Domo's motion to stay Volonte's suit, reasoning that the federal action was materially different from Volonte's suit because the federal action did not include one of Volonte's claims and did not name the Underwriter Defendants as defendants.

*Domo's Motion to Dismiss*

¶10    While Domo's motion to stay was pending before the district court, the Delaware Supreme Court issued *Salzberg v. Sciabacucchi*, 227 A.3d 102, 138 (Del. 2020), which reversed the Delaware Court of Chancery's *Sciabacucchi* decision and upheld

---

4. According to available public records from Delaware, it appears that the opening brief in the case before the Delaware Supreme Court was filed in September 2019, which was two months before Volonte filed the suit at issue here.

the facial validity of FFPs under Delaware law.[5] Relying on this decision, Domo then filed a motion to dismiss Volonte's suit for improper venue. *See* Utah R. Civ. P. 12(b). The Underwriter Defendants later moved to join that motion.

¶11   In its motion to dismiss, Domo argued that its bylaws "designate federal courts as the exclusive forum for litigating cases such as" Volonte's and that "[t]his mandatory federal forum provision" is both "valid and enforceable." Domo noted that it's a Delaware corporation and that the Delaware Supreme Court's decision in *Salzberg* "unanimously and unambiguously upheld the facial validity of federal forum provisions in the charters of three Delaware corporations that are substantively identical to Domo's." Domo then argued that *Salzberg* "applies equally" to a corporation's bylaws, and it asserted that its own FFP was controlling in this case because it "squarely encompasse[d] [Volonte's] lawsuit since he only assert[ed] Securities Act claims." Domo further asserted that Utah federal court is not an unjustly inconvenient forum because it has jurisdiction over federal claims like Volonte's and is competent to hear cases arising under the Securities Act.

¶12   Volonte opposed the motion to dismiss on a number of grounds. First, Volonte argued that the FFP was not a binding

---

5. In line with the practices of some appellate systems (though not ours), the caption for the Delaware Supreme Court case listed the appellant (Salzberg) first, even though that party was the defendant (and thus listed second) in the court of chancery's caption. Both decisions come up with some frequency in this opinion, so to avoid any potential confusion for readers, we again note that *Salzberg v. Sciabacucchi*, 227 A.3d 102 (Del. 2020), is the appeal of *Sciabacucchi v. Salzberg*, No. 2017-0931-JTL, 2018 WL 6719718 (Del. Ch. Dec. 19, 2018), and any short-cite or shorthand references to *Salzberg* or *Sciabacucchi*, respectively, will reflect the particular decision at issue.

contractual provision, at least as applied to shareholders, because of a lack of mutual assent and notice. Second, Volonte argued that even if there had been mutual assent and notice, there was "no binding forum selection clause in effect at the time [Volonte] commenced this action" because the Form 8-K had stated that Domo did not "currently intend to enforce" the FFP. (Emphases omitted.) In conjunction with this argument, Volonte contended that Domo had affirmatively "consented in writing to not enforc[e]" the FFP when it issued the Form 8-K. (Emphases omitted.) Third, Volonte argued that even if the FFP was valid, it was unenforceable under the doctrines of promissory and equitable estoppel because Volonte had relied to his detriment on the Form 8-K's assertion that Domo did not "currently intend to enforce" the FFP when he filed his suit in state court. Fourth, Volonte argued that under *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061, 1078 (2018), state courts can hear Securities Act suits, and he then argued that the FFP was either invalid or unenforceable because it conflicts with certain anti-removal and anti-waiver principles from federal law.

¶13    At a subsequent hearing on Domo's motion to dismiss, Volonte introduced an additional argument, asking the court to retain the case under the forum non conveniens doctrine. Expounding on that argument, Volonte argued that "[Domo's] delay"—i.e., its previous motion to stay—had caused "the federal forum" to not "exist anymore" because of statute of limitations problems. As a result, Volonte asserted that there would not be "an alternative forum to bring this case" should the court dismiss it, so he asked the court not to do so.

¶14    In a separate filing, Volonte also opposed the Underwriter Defendants' motion to join Domo's motion to dismiss. Volonte argued that the Underwriter Defendants "cannot enforce the [FFP] as third-party beneficiaries or under estoppel principles," and he further asserted that the Underwriter Defendants' reliance on the FFP was improper because they "are not signatories or

parties to the bylaws and are not agents of Domo." (Emphases omitted.)

¶15 In April 2021, the district court issued a written decision that sided with Domo and the Underwriter Defendants and dismissed Volonte's suit. In its decision, the court "reject[ed] all contentions" raised by Volonte.

¶16 First, the court noted that under the Delaware Supreme Court's decision in *Salzberg*, FFPs "are facially valid under Delaware law." The court further noted that, "[a]ccording to Delaware law, bylaws are broad, binding agreements among implicated parties" and that they "generally are binding on a corporation's shareholders." The court noted that the Utah Supreme Court has "generally recognized the 'binding nature' of bylaws" too. Given that "the bylaw[s] constitute[d] a binding agreement" under either Delaware or Utah law, the court rejected Volonte's arguments that "no mutual assent surrounded the [FFP]."

¶17 Second, the court rejected Volonte's arguments that the Form 8-K created an agreement between Domo and the shareholders under which Domo could not enforce the FFP. In the court's view, the Form 8-K "merely state[d] that Domo did not intend to enforce the provision unless the *Salzberg* lower court decision was appealed and reversed, which it was."

¶18 Third, the court "disagree[d] with [Volonte's] argument that estoppel require[d] [the court] to deem the [FFP] unenforceable." Without further elaboration, the court concluded that the "elements of estoppel" were "not met."

¶19 Fourth, the court concluded that "*Cyan* does not preclude enforcement of federal forum provisions in relation to Securities Act claims."

¶20    Fifth, as to Volonte's forum non conveniens argument, the court held that because Volonte was "the party defying the forum-selection clause," he had "the burden of establishing that the transfer to the forum for which the parties bargained is unwarranted." (Quoting *Atlantic Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 51 (2013).) The court also noted that "application" of the forum non conveniens doctrine "is discretionary" with a district court. The court then expressed its view that the existence of a valid forum selection clause should be "weighed heavily" in its forum non conveniens analysis. On this front, the court noted that it saw no reason to "ignore the forum provision."

¶21    To the extent that Volonte's forum non conveniens argument also asserted that there was no longer "an adequate, available alternative forum," the court noted that this was an argument that Volonte had only "raised during oral argument." In the court's view, it had "very little to consider regarding" this "dispositive issue." The court noted that Volonte "did not present a convincing argument or present any facts" showing that he had been "precluded from filing" his suit "in federal court." It noted that "no party asked [it] to consider supplemental briefing" on this "specific, dispositive matter" and that it was "not the duty of [the court] to seek out and provide such information to itself." The court observed that "no party" (including Domo and the Underwriter Defendants) had "provided adequate argument or briefing regarding whether" Volonte "could or could not currently bring his claims in federal court" and that the "parties merely glossed over the issue." The court opined that it could not "overstate the importan[ce] of such omission." Addressing this argument on what had been given, the court observed that it appeared that Volonte "could have and should have brought suit in federal court"—or, instead, "in both state and federal court." While the court expressed some "sympath[y]" for Volonte's position, it noted that "despite the clear language of the" FFP, Volonte had "declined to file a federal complaint." From all this,

the court concluded that the forum non conveniens doctrine did not prevent it from enforcing the otherwise valid FFP.

¶22 Finally, the court granted the Underwriter Defendants' motion to join Domo's motion to dismiss. The court held that "[r]equiring a bifurcated trial on the same issues" would "contravene[] the objective of modern procedure, which is to litigate all claims in one action if that is possible." (Quoting *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 813 (Utah 1993).) The court further opined that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses," particularly where "the alleged conduct of the non-parties is so closely related to the contractual relationship." (Quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988).) Expressing the view that it would create "unnecessary burdens" to prevent the Underwriter Defendants from joining that motion, the court granted the Underwriter Defendants' request, thereby dismissing the suit as to them as well.

*Volonte's Motion to Alter, Amend, or Reconsider*

¶23 Volonte subsequently filed a "motion to amend or alter judgment under rule 59 or, in the alternative, request for reconsideration." With respect to his forum non conveniens argument, Volonte asked the court to hold that it was Domo's burden—not his—to demonstrate "that there currently exists an alternative available forum." Volonte further asserted that "the federal forum is no longer available because the one-year statute of limitations expired on September 5, 2020," and that since Domo "failed to show that an adequate alternative forum exists," the court should have denied Domo's motion to dismiss on this basis. (Emphases omitted.)

¶24 The district court rejected Volonte's motion. The court noted that Volonte had not asked it "to amend or make additional findings of fact," but that he had only asked the court to "amend

conclusions of law." In the court's view, this limited its review to the facts that had been before it at the time of its earlier decision. The court further noted that Volonte had "not brief[ed] the [statute of limitations] issue" previously and that his prior factual assertions had "only supported a claim that he *might be* barred from filing the claims in federal court." (Emphasis in original.) Moreover, the court pointed out that it had already conducted "a robust forum non conveniens analysis based on the facts and arguments before it" and that it had rejected Volonte's argument on those facts earlier. Because the court previously had "no relevant information to rely on regarding [the] availability of an alternative forum, and because the [c]ourt found the forum provision clause to be valid and enforceable," the court "decline[d] to further revisit or disturb [the] legal conclusions within the subject ruling."

¶25   Volonte timely appealed the district court's decision to dismiss his case.

## ISSUES AND STANDARDS OF REVIEW

¶26   Volonte raises six issues on appeal.

¶27   First, Volonte argues that the district court erred in construing Domo's FFP as being part of a binding contract between Domo and its stockholders because, in Volonte's view, there was no "meeting of the minds . . . with regard to the" FFP. Second, Volonte separately argues that the Form 8-K created a binding contract that barred Domo from enforcing the FFP and that the district court erred in concluding otherwise. "Whether a contract exists is a legal determination," so we review the rulings on these two issues for correctness. *Thomas v. Mattena*, 2017 UT App 81, ¶ 6, 397 P.3d 856.

¶28   Third, Volonte argues that the FFP is unenforceable under the doctrines of equitable or promissory estoppel. "Claims based

on equitable doctrines are mixed questions of fact and law." *Cottonwood Improvement Dist. v. Qwest Corp.*, 2013 UT App 24, ¶ 2, 296 P.3d 754 (quotation simplified). "Accordingly, we defer to a trial court's factual findings unless there is clear error," but we "review its legal conclusions for correctness." *Id.* (quotation simplified). "However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts." *Id.* (quotation simplified).

¶29 Fourth, Volonte argues that Domo's FFP "violate[s] the Securities Act's anti-removal and anti-waiver provisions." This presents us with a question of statutory interpretation, which is a question of law that we review for correctness. *See Tolle v. Fenley*, 2006 UT App 78, ¶ 11, 132 P.3d 63.

¶30 Fifth, Volonte argues that under the forum non conveniens doctrine, "enforcement of the [FFP] would be unreasonable because there is no longer any available alternative forum" for him to prosecute his class claims. "It is a general rule that the trial court's discretion to invoke the doctrine of forum non-conveniens will not be interfered with by an appellate court, absent an abuse of discretion." *Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977).

¶31 Finally, Volonte argues that the district court erred when it allowed the Underwriter Defendants to join in Domo's motion to dismiss because, as non-signatories to the bylaws, "the Underwriter Defendants were not entitled to invoke the" FFP. Volonte argues that we should review this question for correctness because, in his view, the district court's interpretation of the FFP is a question of law. The Underwriter Defendants, however, argue that this should be reviewed for an abuse of discretion. *See Jacobsen Constr. Co. v. Teton Builders*, 2005 UT 4, ¶ 9, 106 P.3d 719 ("A district court's decision to enforce a forum selection clause is reviewed for abuse of discretion."). We need not resolve this dispute, however, because Volonte's contention fails under both standards.

ANALYSIS

¶32   Volonte challenges the district court's ruling on six grounds.

- First, he argues that the FFP was invalid because of a lack of assent and notice.

- Second, he argues that the FFP was invalid because of Domo's Form 8-K.

- Third, he argues that the FFP was unenforceable under the promissory and equitable estoppel doctrines.

- Fourth, he argues that the FFP conflicts with certain provisions of the Securities Act.

- Fifth, he argues that the FFP should not have been enforced under the forum non conveniens doctrine.

- Finally, he argues that even if the FFP was valid and enforceable as to Domo, it was not enforceable by the Underwriter Defendants.

Our substantive analysis of these issues is set forth in Parts I through VI below. As explained there, we disagree with each of Volonte's arguments.

¶33   Before doing so, however, we first note that there's something of an overarching question about which state's laws govern the various issues. Domo contends that "Delaware law governs the validity of Domo's FFP" but that "its enforceability is governed by Utah law." In Domo's view, the first and second issues are issues of validity that are governed by Delaware law, while the third through fifth issues are issues of enforceability that are governed by Utah law. For his part, Volonte agrees with Domo that "Utah law governs issues of [the] FFP's enforceability," but

he contends that Utah law also governs the issues regarding its validity. With respect to the final issue (which, again, is a dispute between Volonte and the Underwriter Defendants), the parties are largely silent about the potential choice-of-law implications, with both addressing the issue through a mixture of Utah and non-Utah authority.

¶34     In our view, we need not decide whether there is indeed a choice-of-law divide between the issues relating to the FFP's validity and its enforcement. We've previously recognized that a determination about which state's laws apply to an issue is "[t]ypically" "preceded" by the determination that there "is a true conflict between the laws of those states that are interested in the dispute." *One Beacon Am. Ins. Co. v. Hunstman Polymers Corp.*, 2012 UT App 100, ¶ 26 n.10, 276 P.3d 1156. Other courts and authorities have recognized this too. *See, e.g.*, *Phillips v. Marist Society*, 80 F.3d 274, 276 (8th Cir. 1996) (concluding that "a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states" "before entangling itself in messy issues of conflict of laws" (quotation simplified)); *Diamond Ranch Academy, Inc. v. Filer*, 117 F. Supp. 3d 1313, 1320 (D. Utah 2015) ("The court only engages in a choice of law analysis if a true conflict exists between the two state laws."); Restatement (Second) of Conflict of Laws § 302 cmt. d (Am. L. Inst. 1971) (suggesting that a choice of law determination is only required when issues "would be resolved differently under the local law rules of two or more potentially interested states").

¶35     As set forth below in Parts I and II, we see no determinative difference between how Utah and Delaware would resolve the first two issues. As a result, any resolution of the potentially "messy issues of conflict of laws" relating to those issues proves unnecessary. *Phillips*, 80 F.3d at 276 (quotation simplified). With respect to the issues addressed in Parts III through V, we accept the parties' agreement that those issues should be analyzed under Utah law and address them accordingly. Finally, with respect to

the issue addressed in Part VI, we do see at least a potential divide between Utah and Delaware law. But in our view, Delaware law controls the issue, not Utah law, and we further conclude that the district court's ruling was correct under Delaware substantive law.

## I. Assent and Notice

¶36 Volonte first argues that the FFP was invalid because of a lack of assent and notice. Volonte's arguments turn on a few key assertions: namely, that the "Offering Documents issued in connection with Domo's IPO spanned hundreds of pages in small print" and that the "reference to the [FFP] was made in just two sentences buried on" two pages from the prospectus. (Emphases omitted.) Relying on contract principles, Volonte then argues that the FFP is "invalid" due to a lack of "sufficient notice" and a lack of "mutual assent." These arguments fail under both Utah and Delaware law.

¶37 We'll start with Utah. It "is well established precedent that the bylaws of a corporation, together with the articles of incorporation, constitute a contract between the members and the corporation." *Swan Creek Village Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 46, 134 P.3d 1122 (quotation simplified); *accord Turner v. Hi-Country Homeowners Ass'n*, 910 P.2d 1223, 1225 (Utah 1996). As for forum selection clauses within contracts, our supreme court has adopted the Restatement's view that an "agreement as to the place of the action will be given effect unless it is unfair or unreasonable." *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 812 (Utah 1993) (quoting Restatement (Second) of Conflict of Laws § 80 (Am. L. Inst. Supp. 1988)); *see also Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶ 47, 325 P.3d 70 ("Forum selection clauses that have been obtained through freely negotiated agreements and are not unreasonable and unjust will be upheld as valid." (quotation simplified)). Because of this, a "plaintiff who brings an action in violation of a choice-of-forum provision bears

the burden of proving that enforcing the clause is unfair or unreasonable." *Energy Claims*, 2014 UT 13, ¶ 53 n.83 (quotation simplified).

> This may be accomplished by proving (1) that the chosen state would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust; (2) that the choice-of-forum provision was obtained by fraud, duress, the abuse of economic power, or other unconscionable means; or (3) that the courts of the chosen state would be closed to the suit or would not handle it effectively or fairly.

*Bad Ass Coffee Co. of Hawaii, Inc. v. Royal Aloha Int'l, LLC*, 2015 UT App 303, ¶ 7, 365 P.3d 161 (quotation simplified).

¶38    Again, Volonte argues that the FFP was invalid because of a lack of assent and notice. And the predicates for these arguments are his assertions that that the bylaws were "unilaterally[] adopted" and that the FFP was "buried and barely mentioned in hundreds of pages" within the Offering Documents.

¶39    But the bylaws stated that "[a]ny person or entity purchasing or otherwise acquiring any interest in any security of the corporation shall be deemed to have notice of and consented to the provisions" contained therein. Volonte has not argued that he lacked the ability to review the bylaws before purchasing stock. Nor, for that matter, has he provided us with any Utah authority establishing that a purchaser of stock can invalidate a corporation's otherwise-valid bylaws through a lack-of-notice argument of this sort. So far as we can tell, Utah has not addressed this issue. But many other jurisdictions have, and they've widely rejected claims such as this one. *See, e.g., Kirleis v. Dickie, McCamey & Chilcote, PC*, 560 F.3d 156, 162–63 (3d Cir. 2009) (acknowledging that "corporate law principles . . . generally impute to members of the corporation knowledge and acceptance of corporate bylaws");

*Cruise v. Castleton, Inc.*, 449 F. Supp. 564, 570 (S.D.N.Y. 1978) (explaining that "members' knowledge of the constitution and by-laws is presumed"); *North v. McNamara*, 47 F. Supp. 3d 635, 643 (S.D. Ohio 2014) (explaining that "a plaintiff's personal failure to read or become aware of changes made to the bylaws does not make the enforcement of the bylaw inequitable or unjust"); *Rushing v. Gold Kist, Inc.*, 567 S.E.2d 384, 387 (Ga. Ct. App. 2002) ("The members of a corporation are as a general rule conclusively presumed to have knowledge of its bylaws and cannot escape a liability arising thereunder, or otherwise avoid their operation, on a plea of ignorance of them." (quotation simplified)); *In re Unexcelled, Inc.*, 281 N.Y.S.2d 173, 177 (N.Y. App. Div. 1967) ("The stockholders are presumed to have knowledge of the corporation's by-laws."). We find such conclusions persuasive.[6]

¶40 Moreover, to the extent that Volonte's argument turns on his assertion that this bylaw (i.e., the FFP) was "buried," Volonte points to no Utah authority (and we're aware of none) holding that an individual bylaw is invalid if the overall bylaws are lengthy, nor does he offer any workable standard for determining how "buried" a bylaw would have to be before it becomes unenforceable. In any event, his argument here is belied by the fact that the FFP was repeated several times (sometimes in bolded and italicized font) within Domo's Offering Documents. We therefore reject his arguments and conclude that they fail under Utah law.

¶41 The same would be true if this were assessed under Delaware law. "In an unbroken line of decisions dating back several generations, [the Delaware] Supreme Court has made clear that the bylaws constitute a binding part of the contract between a Delaware corporation and its stockholders." *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 955 (Del. Ch. 2013); *accord BlackRock Credit Allocation Income Trust v.*

---

6. As discussed shortly, Delaware treats such questions similarly.

*Saba Cap. Master Fund, Ltd.*, 224 A.3d 964, 977 (Del. 2020). In this sense, "stockholders contractually assent to be bound by bylaws that are valid." *Boilermakers*, 73 A.3d at 958. And as to notice claims, it's settled that "[s]tockholders are on notice that, as to those subjects that are [the] subject of regulation by bylaw[s]," a corporation's "board itself may act unilaterally to adopt bylaws addressing those subjects." *Id.* at 955–56. Indeed, this is precisely "the kind of" procedure that "stockholders buy into" when they purchase stock in a corporation. *Id.* at 956. By purchasing stock, the shareholders "assent to not having to assent to board-adopted bylaws." *Id.* And "argument[s] to the contrary" therefore "misunderstand[] the relationship between the corporation and stockholders." *Id.* at 940.

¶42    Corporate bylaws that limit forums are thus "contractually valid as a facial matter" under Delaware law. *Id.* at 958. And this includes FFPs in particular. In *Salzberg*, the Delaware Supreme Court held that corporate boards have "statutory authority" to adopt this very kind of provision and that such a provision "can survive a facial challenge." *Salzberg v. Sciabacucchi*, 227 A.3d 102, 109, 137–38 (Del. 2020) (quotation simplified).

¶43    As a result, whether viewed through Utah or Delaware law, Volonte's notice and assent arguments fail.[7]

---

7. As a somewhat related matter, Volonte argues that under *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965), the FFP was unenforceable because there was an "absence of meaningful choice." But *Williams* was not a corporate bylaw case; rather, it was about the unconscionability doctrine as it relates to purchases of consumer goods. *See id.* Volonte has not adequately briefed any argument about the applicability of the unconscionability doctrine to a shareholder's purchase of stock in a corporation governed by bylaws, let alone demonstrated that he

(continued…)

## II. The Form 8-K

¶44 Volonte next argues that in the Form 8-K, Domo made a "public commitment to not enforce" the FFP, that this commitment "created a binding contract," and that, "as a result, there was no valid [FFP] in effect at the time that [Volonte] commenced his lawsuit."

¶45 Even if it were legally possible for a Form 8-K to create such a contract or invalidate an otherwise valid bylaw (points that we do not decide here), we see no basis for concluding that this Form 8-K did so in the manner suggested by Volonte. This is so because this Form 8-K was decidedly conditional on its face. Volonte's argument hinges on the portion of the Form 8-K in which Domo stated that it "does not currently intend to enforce the foregoing federal forum selection provision." But Volonte ignores the rest of the sentence, wherein Domo stated that it did not "currently intend to enforce the foregoing federal forum selection provision *unless the* Sciabacucchi *decision is appealed and the Delaware Supreme Court reverses the decision*." (Emphasis added.)

¶46 The term "unless" suggests that two things are linked by a condition. *See Unless*, Webster's Third New Int'l Dictionary 2503 (2002) (defining "unless" as "except on the condition that"); *Unless*, American Heritage Dictionary 1402 (2d ed. 1981) (same). And as discussed, the stated condition here was triggered when *Sciabacucchi* was appealed and then reversed by the Delaware Supreme Court. Regardless of which state's laws apply, we see no basis for concluding that the Form 8-K created any sort of contract under which Domo agreed to not enforce its FFP under the

somehow lacked a meaningful opportunity to review Domo's bylaws before he voluntarily purchased Domo stock. He's therefore provided us with no basis, and we see none, for concluding that the unconscionability doctrine requires reversal in this case.

undisputed sequence of events at issue. Volonte's second argument thus fails.[8]

### III. Estoppel

¶47    Volonte next argues that, even if the FFP is valid, it's still unenforceable under the promissory and equitable estoppel doctrines. As with the argument addressed in Part II, Volonte's estoppel arguments largely turn on the Form 8-K.

A.    Promissory Estoppel

¶48    Volonte first argues that he "acted with prudence and in reasonable reliance on" the Form 8-K by "commencing this action" in Utah state court. From this, he argues that the promissory estoppel doctrine prevents Domo from enforcing the FFP. We disagree.

¶49    "Promissory estoppel is an equitable claim for relief that compensates a party who has detrimentally relied on another's promise." *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 29, 336 P.3d 1077 (quotation simplified). Of note here, the "promise must be sufficiently clear and definite that the person making the promise should reasonably expect the other party to rely on it." *Id.*; *accord Lodge at Westgate Park City Resort & Spa Condo. Ass'n Inc. v. Westgate Resorts Ltd.*, 2019 UT App 36, ¶ 26, 440

---

8. In conjunction with this argument, Volonte notes that "the [FFP] itself provides that it applies 'unless the corporation consents in writing to the selection of an alternative forum.'" Volonte then asserts that the Form 8-K "amount[ed] to a 'consent[] in writing' to the selection of an alternative forum." But Volonte points to nothing in the Form 8-K in which Domo affirmatively consented to the selection of an alternative forum. Instead, as discussed, Domo did nothing more than conditionally say that it would not enforce the provision unless *Sciabacucchi* was appealed and overruled, which is precisely what then happened.

P.3d 793 (holding that the "promise must be reasonably certain and definite, and a claimant's subjective understanding of the promisor's statement cannot, without more, support a promissory estoppel claim" (quotation simplified)); *Mitchell v. ReconTrust Co.*, 2016 UT App 88, ¶ 53, 373 P.3d 189 (holding that "promissory estoppel involves a clear and definite promise" (quotation simplified)).

¶50   So viewed, Volonte's promissory estoppel claim fails. Contrary to Volonte's assertion, the Form 8-K did not make a clear or definite promise to not enforce the FFP under all circumstances. Instead, as discussed, the Form 8-K was decidedly conditional, with Domo merely stating that it did not intend to enforce the FFP "*unless* the *Sciabacucchi* decision is appealed and the Delaware Supreme Court reverses that decision." (Emphasis added.) But the *Sciabacucchi* decision was appealed and the Delaware Supreme Court then reversed it. Volonte therefore cannot rely on the promissory estoppel doctrine as a means of preventing Domo from enforcing its otherwise valid bylaw.

B.    Equitable Estoppel

¶51   Volonte's equitable estoppel argument fails for similar reasons.

¶52   "Equitable estoppel reflects circumstances where it is not fair for a party to represent facts to be one way to get the other to agree, and then change positions later to the other's detriment." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 15, 158 P.3d 1088. The doctrine applies when there is (1) "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; (2) "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act"; and (3) "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Nunley v. Westates Casing Services, Inc.*, 1999 UT 100, ¶ 34,

989 P.2d 1077 (quotation simplified). We see no error, let alone one that exceeded the court's discretion in this equitable ruling, because Volonte's argument fails under both the first and second elements.

¶53 First, Volonte argues that the Form 8-K was inconsistent with Domo's later reliance on the FFP as the basis for moving to dismiss his complaint. But there's no inconsistency. Again, the Form 8-K explained that Domo did not "currently intend to enforce the foregoing federal forum selection provision unless the *Sciabacucchi* decision is appealed and the Delaware Supreme Court reverses the decision." Because the *Sciabacucchi* decision was appealed and then reversed, Domo's subsequent motion to dismiss was consistent with the Form 8-K, not inconsistent with it.

¶54 Second, Volonte claims that he reasonably relied on the Form 8-K by filing his suit in Utah state court. But although *Sciabacucchi* had not yet been reversed when Volonte filed his suit, it had already been appealed, and Volonte had also received many warnings from Domo's counsel that it intended to enforce the FFP if *Sciabacucchi* was reversed. In light of these events, Volonte's action or inaction (i.e., his decision to file suit in Utah and not also file suit in federal court) was not reasonable. Volonte therefore cannot satisfy the second element of equitable estoppel either. We accordingly reject Volonte's equitable estoppel argument.

## IV. The Securities Act

¶55 The Securities Act is set forth in 15 U.S.C. section 77, and it "require[s] companies offering securities to the public to make full and fair disclosure of relevant information." *Cyan, Inc. v. Beaver County Emps. Ret. Fund*, 138 S. Ct. 1061, 1066 (2018) (quotation simplified). This act "create[s] private rights of action" for private citizens, and it also "authorize[s] both federal and state courts to exercise jurisdiction over those private suits." *Id.* Volonte argues

that the FFP is either invalid or unenforceable because it violates two provisions from the Securities Act. We disagree on both fronts.

¶56 Volonte first claims that the FFP violates the Securities Act's anti-removal provision, which states that "no case arising under [the Securities Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). But on its face, the statute simply says that "no case . . . shall be *removed*" to federal court if a plaintiff brought it in state court. *Id.* (emphasis added). Domo, however, did not seek removal of Volonte's case from state to federal court. Rather, Domo sought *dismissal* of that suit, and again, it did so based on a valid bylaw under which a suit such as this one could only be brought in federal court in the first instance.

¶57 Two recent California appellate decisions have examined this exact issue and have separately concluded that the Securities Act's anti-removal provision is not violated by a motion to dismiss. *See Wong v. Restoration Robotics, Inc.*, 293 Cal. Rptr. 3d 226, 237–39 (Cal. Ct. App. 2022) ("The removal bar of [the Securities Act] prohibits the removal of cases to federal court, but does not prohibit the enforcement of a forum selection clause concerning 1933 [Securities] Act claims that is part of a company's certificate of incorporation."); *Simonton v. Dropbox, Inc.*, No. A161603, 2022 WL 1514619, at *4 (Cal. Ct. App. 2022) (holding that the corporation's "forum selection provision does not conflict with the anti-removal provision of the 1933 [Securities] Act").[9] Based

---

9. Though *Wong* and *Simonton* were issued by panels from the same district (albeit not the same division) of the California Court of Appeal, we note that "there is no horizontal stare decisis in the California Court of Appeal." *Sarti v. Salt Creek Ltd.*, 85 Cal. Rptr. 3d 506, 510 (Cal. Ct. App. 2008); *see also McCallum v. McCallum*, 235 Cal. Rptr. 396, 400 n.4 (Cal. Ct. App. 1987) (noting that "one
(continued…)

on the plain text of the anti-removal provision, we reach the same result here and hold that Domo's motion to dismiss was not barred by the Securities Act's anti-removal provision.

¶58   Second, Volonte claims that Domo violated the Securities Act's anti-waiver provision, which states that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of [the Securities Act] . . . shall be void." 15 U.S.C. § 77n. According to Volonte, the FFP violates this provision by requiring "shareholders to waive their ability to bring Securities Act claims in any state court."

¶59   But in interpreting the Securities Act, the United States Supreme Court has distinguished between the "substantive" provisions of the Act (such as "the provision placing on the seller the burden of proving lack of scienter when a buyer alleges fraud") and the Act's "procedural" provisions (such as "the grant of concurrent jurisdiction in the state and federal courts without possibility of removal"). *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481–82 (1989). In the Court's view, "[t]here is no sound basis for construing" the Securities Act's anti-waiver provision "to apply to these procedural provisions." *Id.* at 482. And, notably, the Court has expressly held that the Securities Act's anti-waiver provision is not "properly construed to bar any waiver" of "the right to select the judicial forum and the wider choice of courts." *Id.* at 481.[10]

---

district or division may refuse to follow a prior decision of a different district or division" (quotation simplified)).

10. This is consistent with the Supreme Court's conclusion two years earlier when interpreting an identical anti-waiver provision in the Securities Exchange Act of 1934. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227–28 (1987). There, the

(continued…)

¶60    *Rodriguez* remains good law and we are bound by it. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh, J., concurring in part) ("[T]he state courts and the other federal courts have a constitutional obligation to follow a precedent of this Court unless and until it is overruled by this Court."). Given this, we conclude that enforcement of Domo's FFP does not violate the Securities Act's anti-waiver provision. Volonte's arguments thus fail.

## V. Forum Non Conveniens

¶61    Volonte next argues that the FFP should not be enforced under the forum non conveniens doctrine. This is so, according to Volonte, because he lacks "an adequate alternative forum" in federal court due to the expiration of the statute of limitations during the pendency of this case. We reject Volonte's arguments for several reasons.

¶62    First, it's "a general rule that the trial court's discretion to invoke the doctrine of forum non-conveniens will not be interfered with by an appellate court, absent an abuse of discretion." *Kish v. Wright*, 562 P.2d 625, 628 (Utah 1977); *accord Energy Claims*, 2014 UT 13, ¶ 27. We see no reason why an appellate court would not give the same deference to a trial court's decision *not* to invoke the doctrine. And under this standard of review, a court's decision to apply (or, as here, not apply) the forum non conveniens doctrine is reversed "only if (1) the district court relied on an erroneous conclusion of law or (2) there was no evidentiary basis for its ruling." *Energy Claims*, 2014 UT 13, ¶ 27 (quotation simplified).

¶63    As noted, Volonte made his forum non conveniens argument below for the first time at oral argument on the motion

---

Court explained that the anti-waiver provision at issue in that case "only prohibits waiver of the substantive obligations imposed by the Exchange Act." *Id.* at 228.

to dismiss. When he did, however, he gave the court "very little to consider regarding" this issue. Of note, when the court later rejected Volonte's argument, it stated that Volonte "did not present a convincing argument or present any facts" showing that he "was precluded from filing" his suit "in federal court." And the court further stressed that it could not "overstate the importan[ce]" of Volonte's "omission" to its ultimate decision not to rely on this doctrine.

¶64 Volonte was "the party defying the forum-selection clause," *Atlantic Marine Constr. Co., v. United States Dist. Ct.*, 571 U.S. 49, 63 (2013), and he thus bore "the burden of proving that enforcing the clause" would be "unfair or unreasonable," *Energy Claims*, 2014 UT 13, ¶ 47 (quotation simplified). Insofar as Volonte's argument about the purported unfairness or unreasonableness of the FFP turned on the forum non conveniens doctrine—the application of which, again, is discretionary with the district court—we can hardly conclude that the district court abused its discretion by concluding that Volonte had not carried his burden, where Volonte raised that argument for the first time at oral argument and then provided the court with an inadequate record to support his own claims.[11]

---

11. Volonte later attempted to cure this defect in his rule 59 motion, but the district court "decline[d] to further revisit or disturb [the] legal conclusions within the subject ruling." We see no reversible error here either.

    To the extent that Volonte's motion was rule-based, we note that Volonte only invoked rule 59(a)(7), which applies when the decision in question was "contrary to law or based on an error in law." Utah R. Civ. P. 59(a)(7). As explained in this opinion, we see no legal error in the district court's grant of Domo's motion to dismiss. And to the extent that Volonte's motion was understood as a motion for reconsideration, there was still no reversible error.

    (continued…)

¶65  Second, the district court also did not abuse its discretion because Volonte has not established that he was even making a proper forum non conveniens argument. The forum non conveniens doctrine allows "a court with jurisdiction over a lawsuit to *decline* to exercise that jurisdiction, as a matter of discretion, when the cause could better be tried in a more convenient court." *Edwards v. Carey,* 2019 UT App 182, ¶ 20, 454 P.3d 73 (emphasis added, quotation otherwise simplified); *accord Rocky Mountain Builders Supply Inc. v. Marks*, 2017 UT App 41, ¶ 5 n.3, 392 P.3d 981. Citing precedent from our supreme court, we have recognized that the doctrine's purpose "is to provide protection against a plaintiff selecting a remote court where added time, trouble, and expense would result in unreasonable inconvenience and hardship to the defendant." *Edwards,* 2019 UT App 182, ¶ 20 (citing *Summa Corp. v. Lancer Indus., Inc.*, 559 P.2d 544, 545–46 (Utah 1977)).

¶66  This doctrine is commonly framed in similar terms. As noted in one oft-invoked treatise, for example, the doctrine "allows a district court with jurisdiction over the subject matter and the parties discretion to decline jurisdiction over a cause of action when another forum would be more convenient for the

---

"Trial courts are under no obligation to consider motions for reconsideration," and "any decision to address or not to address the merits of such a motion is highly discretionary." *Mower v. Simpson*, 2017 UT App 23, ¶ 43, 392 P.3d 861 (quotation simplified). A court does not abuse its discretion in denying such a motion when the "evidence and arguments" presented "existed and could have been asserted when the underlying motion" was litigated. *Blueridge Homes Inc. v. Method Air Heating & Air Conditioning*, 2019 UT App 149, ¶ 21, 450 P.3d 114. Volonte's arguments about the alleged unavailability of the federal forum all could have been presented during litigation on the underlying motion to dismiss. The district court therefore did not abuse its discretion in denying the motion to reconsider.

parties, the witnesses, and the court," and the "principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." 20 Am. Jur. 2d *Courts* § 109 (2023). Thus, "properly used," the doctrine "protects courts from being compelled to hear cases when doing so would be fundamentally unfair to the defendants or the public or both." *Id.* Others have framed it similarly. *See, e.g.*, *Forum non conveniens* Black's Law Dictionary (11th ed. 2019) (citing authority for the proposition that the doctrine "allows a court to exercise its discretion to avoid the oppression or vexation that might result from automatically honoring plaintiff's forum choice"); 21 C.J.S. *Courts* § 82 (2023) ("Forum non conveniens allows a court to decline the exercise of jurisdiction of a case if it appears that another forum can better serve the convenience of the parties and the ends of justice."); Restatement (Second) of Conflict of Laws § 84 (Am. L. Inst. 1971) ("A state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff."). Moreover, since the question before a court in a forum non conveniens action is whether the court should decline to exercise jurisdiction, the "traditional remedy" associated with a successful forum non conveniens motion is "outright dismissal" of the plaintiff's case. *Atlantic Marine Constr. Co.*, 571 U.S. at 60, 66 n.8.

¶67    In light of these principles, Volonte's invocation of the forum non conveniens doctrine is misplaced. Volonte is not a defendant who asked the court to decline jurisdiction or dismiss a case because the plaintiff filed it in a geographically distant forum. Rather, Volonte is a plaintiff who invoked the doctrine in an effort to render a forum selection clause unenforceable and thereby compel litigation in the forum of his choosing.

¶68    Volonte points to no authority that allows the forum non conveniens doctrine to be used by a plaintiff to defy a forum selection clause and defeat a motion to dismiss. But again, the

doctrine is discretionary with the district court, and a district court's decision to apply (or not apply) this doctrine is reversed "only if (1) the district court relied on an erroneous conclusion of law or (2) there was no evidentiary basis for its ruling." *Energy Claims*, 2014 UT 13, ¶ 27 (quotation simplified). In the absence of any authority even allowing this doctrine to be used this way, let alone any authority requiring a court to use this doctrine this way, we see no abuse of discretion in the district court's refusal to rely on this doctrine as reason for denying Domo's motion to dismiss.

## VI. The Underwriter Defendants' Motion to Join

¶69    As noted, the FFP was contained within Domo's bylaws, and those bylaws act as a contract between Domo and its shareholders. Unlike Domo, the Underwriter Defendants are not parties to that contract. But even so, the district court allowed them to rely on the FFP and thus join in Domo's FFP-based motion to dismiss. Volonte's final argument is a challenge to that decision.

¶70    Unlike the issues discussed in Parts I and II above, there's at least some reason to think that the choice of law might matter on this issue. The Underwriter Defendants' primary argument is that they can rely on the FFP as "third-party beneficiaries" of Domo's bylaws. But under controlling Utah authority, a "third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a separate and distinct benefit on the third party." *VCS, Inc. v. Countrywide Home Loans, Inc.*, 2015 UT 46, ¶ 29, 349 P.3d 704 (quotation simplified). Of note, "the contract itself must affirmatively make this intention clear." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 47, 28 P.3d 669 (quotation simplified). The contract at issue here is Domo's bylaws, but the Underwriter Defendants point to nothing in the bylaws that clearly expresses an intention to confer a separate and distinct benefit on the Underwriter Defendants.

¶71 Relying on *Ellsworth v. American Arbitration Ass'n*, 2006 UT 77, ¶ 19, 148 P.3d 983, the Underwriter Defendants also invoke the nonsignatory estoppel rule. In the passage at issue, *Ellsworth* suggested that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." *Id.* *Ellsworth* said nothing about this rule extending outside the arbitration context, however, and our supreme court has recently clarified that it has "never formally adopted" the nonsignatory estoppel principle. *Gold's Gym Int'l, Inc. v. Chamberlain*, 2020 UT 20, ¶ 45, 471 P.3d 170.

¶72 But we need not definitively decide whether the Underwriter Defendants can rely on the FFP under Utah law. In light of what's at least a potential conflict with how Delaware would approach this issue, we have reason to engage with the question of which state's laws govern this issue. And in our view, it's Delaware law, not Utah law, that controls whether the Underwriter Defendants can rely on the FFP. Because the Underwriter Defendants can rely on the FFP under Delaware law, the district court did not err in granting their motion to dismiss.

A.    Choice of Law

¶73 When determining which state's laws apply to a dispute between two contracting parties, the "law of the forum state" governs the "choice of law analysis." *One Beacon*, 2012 UT App 100, ¶ 27; *see also* Restatement (Second) of Conflict of Laws § 2 cmt. a(3) (Am. L. Inst. 1971) (explaining that "[e]ach state has rules to determine which law (its own local law or the local law of another state) shall be applied by it to determine the rights and liabilities of the parties resulting from an occurrence involving foreign elements," and that while the forum state's "choice-of-law rules" "do not themselves determine the rights and liabilities of the parties," they do "guide decision as to which local law rule will be applied to determine these rights and duties").

¶74    When determining which state's laws will apply to a dispute, Utah courts first look to whether there was an "effective choice of law" by the parties. *One Beacon*, 2012 UT App 100, ¶ 28 (quoting Restatement (Second) of Conflict of Laws § 188 (Am. L. Inst. 1971)). If there wasn't, our courts "apply the most significant relationship approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054 (quotation simplified); *see also American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996). Here, no party has pointed to anything in Domo's bylaws that dictates which state's laws will govern a dispute between a shareholder and purported third-party beneficiary. This choice-of-law determination accordingly turns on application of the Restatement's "most significant relationship" test.

¶75    Under that test, the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 188(1). But section 188(2) also directs courts to consider a series of "contacts" between the parties, and our appellate courts have commonly started their choice-of-laws analyses there. *See, e.g.*, *American Nat'l Fire Ins. Co.*, 927 P.2d at 188; *One Beacon*, 2012 UT App 100, ¶ 28. We do so here too.

¶76    The contacts identified in section 188 include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2). And section 188 further acknowledges that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Having considered these contacts, we find their application to

this case to be inconclusive. For example, the contract at issue is Domo's bylaws, but the record and briefing are unclear as to where it was contracted or negotiated. Moreover, Domo is incorporated in Delaware, but it's headquartered in Utah. And as for the place of performance, this contact's applicability seems uncertain in a situation like this one where the contract is a bylaw for a corporation that provides services on a national and even international basis.

¶77   But as noted, in addition to the contacts-based analysis, section 188 directs courts to consider "the principles stated in § 6." *Id.* § 188(1). And given what's at issue, those principles seem to be a more apt guide for our decision. In section 6, the Restatement states that "the factors relevant to the choice of the applicable rule of law include" the following:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (Am. L. Inst. 1971).

¶78   When applying these factors, we keep in mind the interests underlying the Restatement's choice of law rules in general. As explained by the Restatement, "[p]robably the most important function of choice-of-law rules is to make the interstate and international systems work well." *Id.* § 6 cmt. d. The interstate and international systems, in turn, benefit from "predictability and uniformity of result." *Id.* § 6 cmt. i. And these outcomes are "of

particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions," such as contract or corporate law. *See id.*; *see also id.* § 302 cmts. a, e.

¶79 In light of these principles and interests, we can't help but note that this dispute is primarily national, not local, in nature. It involves allegedly false statements made in an IPO by a corporation that, though headquartered in Utah, is incorporated in Delaware and does business worldwide. And though not dispositive on its own, the Delaware component to this is certainly relevant—particularly in light of the Restatement's directive to consider the needs of the interstate system. After all, it is a "well-documented fact that for-profit corporations frequently elect to incorporate out-of-state, and their choices are concentrated in the state of Delaware," in part, so as to "achieve a great degree of uniformity in the laws" that govern the "business sector." Garry W. Jenkins, *Incorporation Choice, Uniformity, and the Reform of Nonprofit State Law*, 41 Ga. L. Rev. 1113, 1118–19 (2007). The Delaware Supreme Court reiterated this in *Salzberg*, noting that Delaware law seeks to promote the "policies" of "certainty," "predictability," and "uniformity" in the resolution of "corporate disputes." 227 A.3d at 137.

¶80 Moreover, as noted by the Delaware Supreme Court in *Salzberg*, there's a particular "need for uniformity and predictability" relating to judicial decisions regarding FFPs. *Id.* at 136. *Salzberg* noted that after the United States Supreme Court's decision in *Cyan* (wherein the Court held that federal and state courts have concurrent jurisdiction over Securities Act claims), there was an "uptick" in state court filings of Securities Act suits, with a "parallel action" being filed in federal court in "about 45 percent" of these cases. 227 A.3d at 114 (quotation simplified). Because there's "no procedural mechanism" for consolidating or coordinating "parallel state and federal actions," however, this development produced "obvious" "costs and inefficiencies" for corporations as these cases were "litigated simultaneously in both

state and federal courts." *Id.* at 115. *Salzberg* noted that corporations began adopting FFPs as a direct response to this—i.e., these provisions were intended to force such suits into federal court to curb the duplicative litigation costs and, also, to produce more certainty and predictability for the corporations themselves. *Id.*

¶81    Above, we've held that Domo can rely on the FFP, and the particular question before us now is whether the Underwriter Defendants can too. Like Domo, the Underwriter Defendants are not Utah-based actors. Rather, they're national actors who assisted Domo with its IPO. But Volonte's claims against them are based on the same federal statutes that are at issue in his claims against Domo. And as discussed in more detail below in Part VI(B), his claims against them are also based on conduct that's largely intertwined with the conduct at issue in his claims against Domo. Further, Volonte does not dispute the Underwriter Defendants' assertion that Domo entered an agreement with the Underwriter Defendants in which Domo is required to indemnify them for any losses arising from securities litigation of this sort. This, too, suggests that both Domo and the Underwriter Defendants see their interests as being linked with respect to this kind of Securities Act claim.

¶82    Given the litigation landscape described by *Salzberg*, it seems to us that if different states were to adopt different rules regarding the ability of parties such as these Underwriter Defendants to rely on an FFP in suits like this one, this would promote uncertainty and inconsistency in such cases, which could have deleterious effects on the "interstate and international systems." Restatement (Second) of Conflict of Laws § 6 cmt. d. This is at odds with the understood purposes of the choice-of-law rules themselves.

¶83    In short, given that the Underwriter Defendants are national (not local) actors, that this suit is based on federal (not

Utah) statutes, that the conduct in question occurred during the IPO of a corporation that is incorporated in Delaware, that this corporation has an indemnification agreement that would require it to cover the losses for the Underwriter Defendants in a suit like this one, and that this corporation also has a bylaw that expressly requires suits filed under these federal statutes to be filed in federal court, we believe that Delaware, not Utah, has the most significant relationship to the question of whether the Underwriter Defendants can rely on the FFP. We accordingly apply Delaware law to resolve this issue.

B.     Delaware Law

¶84     In *Ashall Homes Ltd. v. Rok Entertainment Group Inc.*, 992 A.2d 1239, 1249 (Del. Ch. 2010), the Delaware Court of Chancery allowed several nonsignatory defendants to enforce a contract's forum selection clause against a signatory plaintiff. The court noted that the nonsignatory defendants in that case had "solicited" the plaintiffs to invest in the transaction at issue in the suit, had "managed" some of the funds in question, and were now "being sued . . . as a result of acts" that "directly implicate[d] the negotiation" and "performance" of the very agreements that also contained the forum selection clause. *Id.* In light of these circumstances, and because the nonsignatory defendants were also "closely related to one of the signatories," *Ashall Homes* held that it should have been "foreseeable" to the signatory plaintiff that the nonsignatory defendants "would invoke" and "enforc[e]" the forum selection clause. *Id.* The court favorably cited cases suggesting that when a plaintiff's claims against a nonsignatory defendant are closely related to contractual obligations, the forum selection clause would apply to and benefit parties and non-parties alike. *Id.* at 1249 n.51. In such circumstances, the court held that it would "be inequitable to permit" signatory plaintiffs "to escape their contractual promise to litigate all disputes" in the chosen forum. *Id.* at 1249.

¶85 Delaware courts have since construed *Ashall Homes*'s test as "rest[ing] on the public policy that forum selection clauses promote stable and dependable public relations," thus "foreclos[ing] an end-run around an otherwise enforceable forum selection provision." *Neurvana Med., LLC v. Balt USA, LLC*, No. 2019-0034-KSJM, 2019 WL 4464268, at *5 (Del. Ch. Sept. 18, 2019) (quotation simplified). While acknowledging that some aspects of the test have "been criticized" and that it might be of limited utility in some scenarios, *id.* at *1, Delaware courts have nevertheless continued to apply it in the scenario at issue in *Ashall Homes*—namely, to allow "non-signatory defendant[s] to enforce forum selection clauses *against signatory plaintiffs*," *id.* at *5 (emphasis in original); *accord Buzzfeed, Inc. v. Anderson*, No. 2022-0357-MTZ, 2022 WL 15627216, at *12 (Del. Ch. Oct. 28, 2022) (recognizing that the *Ashall Homes*'s "foreseeability test operates . . . when nonsignatory defendants seek to enforce a forum selection clause against signatory plaintiffs"). In this sense, Delaware courts recognize the rule as being an "application of equitable estoppel" that applies "when a *signatory* should be required to bring claims against a non-signatory in a contractually selected forum." *Neurvana Med.*, 2019 WL 4464268, at *5 n.42 (emphasis in original).

¶86 The situation at issue here fits comfortably under *Ashall Homes*'s test. Though this is not a standard contract in which the parties in the case were both signatories to the contract, this is a corporation/shareholder scenario that, again, is interpreted under contract-based principles. And in such a scenario, the shareholder effectively becomes a signatory to the corporation's bylaws by purchasing stock. *See Boilermakers*, 73 A.3d at 956 (noting that when "stockholders buy into" a corporation by purchasing stock, they "assent to not having to assent" to any "board-adopted bylaws").

¶87 Thus, as in *Ashall Homes*, this case involves a party to a contract (Volonte) who is trying to find an "end-run around an

otherwise enforceable forum selection provision" in his suit against third-party beneficiaries (the Underwriter Defendants). *Neurvana Med.*, 2019 WL 4464268, at *5 (quotation simplified). But the Underwriter Defendants' decision to invoke and enforce the forum selection clause was foreseeable under *Ashall Homes*'s rule. As noted, Volonte is suing the Underwriter Defendants for "helping to solicit investors to buy Domo stock in the IPO," failing "to conduct adequate due diligence," and "act[ing] as financial advisors for and assist[ing] in the preparation and dissemination of" Domo's allegedly "false and misleading" Offering Documents. This is similar to the conduct at issue by the third-party beneficiaries in *Ashall Homes*, which, again, was "solicit[ing]" others to participate in the transaction, "manag[ing]" some of the funds, and performing other acts involved in the "negotiation" and "performance" of the agreements that led to the suit. 992 A.2d at 1249.

¶88    In these circumstances, we conclude that it was foreseeable that, like Domo, the Underwriter Defendants would invoke the FFP in response to a suit such as Volonte's. As a result, we conclude that under Delaware law, the Underwriter Defendants can rely on the FFP as well.

¶89    Because Delaware law allows the Underwriter Defendants to enforce this provision, the district court did not err in permitting them to join in Domo's motion to dismiss. And because we concluded above that Domo's motion to dismiss was correctly granted under that FFP, the motion to dismiss was correctly granted as to the Underwriter Defendants too.

CONCLUSION

¶90    We affirm the district court's ruling. The FFP was enforceable as a binding contract between Domo and its shareholders. Because Volonte filed his suit in contravention of it, it was properly dismissed. Moreover, under applicable Delaware

law, the Underwriter Defendants were entitled to enforce the FFP against Domo's shareholders who sued them. They were accordingly entitled to dismissal as well.

———————